16 . SUPREME COURT OF GEORGIA.

Phillips, guar. vs. Chappell *et al.* adm'rs. ·

No. 4.—JAMES S. PHILLIPS, guardian of James S. Phillips, plaintiff in error, *vs.* GABRIEL H. CHAPPELL and THOMAS BENSON, administrators of James Hopkins, deceased, defendant in error.

[1.] A father makes to his daughter an instrument in writing, which, without the doing of any violence to the words of it, may import an advancement of so much of her portion, or a gift over and above that portion: *Held,* that although the legal presumption from the face of the instrument may be that he intended an advancement, yet, that such presumption may, at least in Equity, be rebutted and rebutted by parol evidence, showing the intention to have been such a gift.

[2.] A father, after conveyance in writing, of slaves made to his daughter, makes verbal admissions, tending to show that by the conveyance he did not design an advancement of so much portion, but a gift or settlement beyond such portion : *Held,* that these admissions are evidence against a son claiming as heir.

[3.] Admissions of a deceased person, tending to show that an instrument of writing made by him, was founded on a valuable consideration, cannot have the effect to set up the instrument as a will.

In Equity, in Meriwether Superior Court. Tried before Judge STARKE, February Term, 1854.

This was a bill in Equity, filed by the defendant in error against the plaintiffs in error, as administrators on the estate of James Hopkins, deceased, for his ward's distributive share of said estate.

In their answer, the defendants alleged that their intestate, while in life, executed a deed of gift for two negroes, to-wit: Mary and her child Robert, to his daughter Amelia, who subsequently intermarried with Thomas Benson, one of the defendants. That under and by advice of Counsel, in course of administration of said estate, they treated the said negroes, Mary and Robert, as an advancement; and in distributing said estate, they had included said negroes as a part of the same, and had given their note for the complainant's share, in said notes to complainants. They alleged that the said negroes ought not to have been treated as an advancement, but insisted

that they were an independent gift by James Hopkins, to his daughter Amelia Hopkins, now Amelia Benson, and prayed the Court that the note given to complainant, for his share of said negroes, be cancelled.

On the trial, the defendants read in evidence the following paper:

"GEORGIA—WILKES COUNTY:

Know all men by these presents, that I, James Hopkins, of the county and State aforesaid, for and in consideration of the love and affection which I have and bear to my daughter Amelia Hopkins, I give to my said daughter the following negro slaves, viz: a negro woman named Mary, about eighteen or nineteen years of age, and her child Robert, near two years old, and all the future increase of said negro woman Mary : nevertheless, reserving to myself my life-estate in the said negroes. All of which I hereby warrant and forever defend against me and my heirs, and all persons whatever, on the condition above stated. To have and to hold the said negroes and their increase, as above mentioned, after the termination or dissolution of my life. In witness whereof I have hereunto set my hand and seal, this 18th day of March, 1824.

JAMES HOPKINS.

Signed and acknowledged in presence of John Dyson", and regularly recorded.

Defendants then proposed to prove, by Abijah Smith and others, the declarations of James Hopkins, made after the execution of the instrument, and after the negroes had gone into the possession of Benson, in substance, as follows: "that after the death of his (Hopkins') first wife, the mother of Permelia, there was a contest between Mr. Rodes, the father of Hopkins' first wife and Hopkins, as to whether the negroes mentioned in said deed of gift, had been loaned or given to Mrs. Hopkins, and that Rodes claimed the right to give the slaves to his granddaughter, Permelia Benson, and the matter was adjusted be-

tween them by Hopkins agreeing to convey the property to his daughter Permelia ; and the deed of gift was made in pursuance of that adjustment".

The defendants also proposed to prove by the same witness, " that in 1843 Benson applied to James Hopkins to borrow money, and Hopkins refused to loan him the money, except at 16 per cent. ; and said that Benson and his wife should never have any other or further advantage over his other children, than they had already acquired in the receipt of the said negroes. He would not let him have the money, except at 16 per cent. as he had already given him the negroes mentioned in the deed, over and above the rest".

The Court excluded the testimony offered, on the grounds—

1. Because parol evidence is inadmissible to explain, add to or vary the deed of gift.

2. Because the proposed admissions are from a party, who had previously parted with both the possession, as well as all interest in the slaves, and were not contemporaneous with the gift nor a part of the "*res gestæ*".

3. Because the effect of the admissions would be to set up a will for the intestate, by parol.

To which decision and ruling of the Court, Counsel for defendants excepted.

DOUGHERTY, for plaintiff in error.

J. L. STEPHENS, for defendant in error.

*By the Court.*—BENNING, J. delivering the opinion.

Whether the intention of James Hopkins was to give the negroes to his daughter Amelia, as an advancement of so much of her portion in his estate, or as a present over and above that portion, or even as something in compromise of a claim which she set up against him, the instrument which he made to her, without the necessity of having to do much if any violence to the words of it, is capable of subserving that intention. The rela--

tionship of parent and child being considered, the intention is doubtless to be presumed, as long as there is nothing but the face of the instrument to go by, to have been an advancement. *Ellison vs. Cookson*, (1 *Ves. Jr.* 108.) But this presumption is one which, at least in Equity, is liable to be rebutted, and rebutted by parol evidence; such, for example, as shall show the intention to have been either of the other two mentioned things. In support of this proposition, numerous cases may be found cited in 2 *Stark. Ev.* 569, and in *note* 1003 *to Phil. Ev.* with *Cowen & Hill's Notes.*

[1.] The Court below, therefore, in rejecting the evidence because it was parol evidence, erred.

At the time when James Hopkins made the admissions, he had, it may be true, parted with the "possession" of the negroes; but if it be true that he had also parted with "all interest" in them, how comes it that his son, the defendant in error, can say that they are any part of the father's estate, and claim them by inheritance? The nature of the son's claim, is such as to make it indispensable for him to concede that the father, at the time of making the admissions, had *not* parted with all interest in the negroes.

This being so, the admissions of the father bound the father, as they were against his interest; and what binds the ancestor binds the heir. *Smith vs. Smith*, (3 *Bing. N. C.*) And see *Dartmouth vs. Roberts*, (16 *East.* 844.) *Ivat vs. Finch*, (1 *Taunt.* 141.)

[2.] The Court below, therefore, in holding that Hopkins, the ancestor, at the time of making the admissions, had parted with all interest in the slaves in such a sort that his admissions could not bind his heir, erred.

3 The effect of admitting the evidence, it is conceived, would have been, not to "set up a will"—not to make out the instrument to be a will, but to make it out to be a deed—a conveyance on a *valuable consideration*—the compromise of a claim—a conveyance, therefore, irrevocable—a conveyance conveying a right in the present—a possession in the future.

Therefore, as it appears to us, the Court below was wrong in holding that the effect of the evidence, if admitted, would be to set up a will by parol.