(Decided 13th January, 1882.)

GEORGE W. HARLEY *vs.* JOSEPHUS E. HARLEY, and others.

*What constitutes an Advancement.*

Loose declarations of a parent, that he intended an existing debt should be an advancement, not substantiated by writing, nor made to the child, nor assented to by him, nor accompanied by any act, are not sufficient to destroy a debt secured by a legal instrument in full force, and to change it into a gift by way of advancement, whether offered by the son to defeat the recovery of the debt, or by the representatives of the parent against the son to defeat his claim to a distributive share.

APPEAL from the Circuit Court for Frederick County, in Equity.

The case is stated in the opinion of the Court.

The cause was argued before BARTOL, C. J., MILLER, ALVEY, ROBINSON and IRVING, J.

*Albert Ritchie,* for the appellant.

*James McSherry,* for the appellees.

ALVEY, J., delivered the opinion of the Court.

Otho J. Harley died in December, 1871, intestate, leaving several children surviving him. He was seized at the

time of his death of certain real estate, and that real estate has been sold under a decree, and a part of the money arising from the sale is in Court for distribution among the heirs-at-law of the deceased. And, in the matter of distribution, questions have arisen whether one of the children had not been advanced by the intestate in his life-time, and whether such advancements should not be brought into hotchpot with this fund arising from the sale of the real estate, in order to equalize the distribution among the heirs.

At the time of the death of the intestate he had in his possession three promissory notes made by his son, George W. T. Harley; two of them were made payable to the intestate himself, and the other was made to Josephus E. Harley, and by the latter transferred to his father the intestate. The first of these notes is dated April 1st, 1869, for $413, payable six months after date, to the order of the payee, with interest from date; the second is dated August 12th, 1871, for $630, payable six months after date, to the order of the payee, with interest from date; and the third note is dated the 12th of December, 1870, for $2591, payable six months after date to Josephus E. Harley, or order, with interest from date. This latter note was secured by mortgage: and on the 23rd of November, 1871, but a few days before the death of the father, and during the illness of which he died, this note was transferred to him, by written transfer, and the father gave his note to the son, for the amount due on the note thus transferred, principal and interest. The amounts of these three notes are the sums that are alleged to have been advanced by the intestate to his son, George W. T. Harley.

At the time of the death of the intestate, George W. T. Harley, the son, was largely indebted to various persons, by judgments and otherwise, and was wholly insolvent. He denies utterly that his indebtedness to his

father was ever intended as advancements. He insists that his pecuniary relation with his father was that of debtor and creditor simply; and that he never understood or supposed for an instant, from anything said or done by his father, that the money due on the promissory notes given to the latter was intended as advancements; and that he never knew that' the note given to his brother Josephus had been transferred to his father until after his father's death. That he had paid the interest on the notes given to his father; and that all three of the notes were treated by the administratrix of the estate, who was the widow of the deceased, as debts due the estate, and were so returned under oath to the Orphans' Court; and that no claim or pretence was set up that the notes were to be treated as mere evidence of advancements made by the, father to the son, until the question arose upon the distribution of the proceeds of the sale of the real estate.

An advancement, in legal contemplation, is simply the giving, by anticipation, the whole or part of what it is supposed the child or party advanced would be entitled to receive on the death of the party making the advancement. It does not involve the elements of legal obligation or future liability on the part of the party advanced, but it is a pure and irrevocable gift, and must result from a *complete act* of the intestate in his life-time, by which he *divests himself of all property in the subject,* though in some cases, and under some circumstances, it may not take effect in possession until after the intestate's death. *Clark vs. Wilson,* 27 *Md.,* 700; *Edwards vs. Freeman,* 2 *P. Wms.,* 440, 446; 2 *Wms. on Ex'rs,* 1289, 1291–2.

In this case, the taking and holding the notes in the form we find them, without any contemporaneous written entry or memorandum to explain the transaction, give rise to the *prima facie,* if not conclusive presumption, that at the time the notes were taken they were taken for debts due, according to their legal import, and not

for advancements made to the maker. This being the legal presumption from the face of the notes, the *onus* of proof is upon the party who sets up the fact of advancement, to show by clear and indubitable proof, that what is so clearly apparent to be simply a debt due, was intended either originally or subsequently to be an advancement instead of a debt. *High's Appeal,* 21 *Penn. St.,* 283; *Grey vs. Grey,* 22 *Ala.,* 233.

Here, the only proof relied upon to establish the fact of advancements, are certain declarations of the intestate, made to certain members of his family, as to his intention or purpose to treat the debts due him from the son as advancements, with reference to the general division of his estate. These declarations, giving to them the strongest construction that they will reasonably bear, are by no means precise and definite as to any *complete or consummated act* of the intestate, whereby he had divested himself of all right of property in the notes, and thereby excluded himself from the exercise of any further dominion and control over the notes or the debts due from the son; and without such divestiture and surrender of dominion and control of the debts, they could not be converted into advancements to the debtor.

It is not pretended that any of the declarations of the deceased offered in evidence, in regard to his purpose to treat the existing debts of the son as advancements, were assented to by the son, or even brought to his knowledge during the life-time of the father. These declarations of the father were elicited, it would seem, in conversations had with his other children, and appear to have been made more to appease their complaints and apprehensions in regard to the division of his estate, than anything else. Whatever the motive may have been for taking up the note held by Josephus, the legal presumption is, that he acquired and held the note as evidence of debt against his son, George W. T. Harley, as any other endorsee would have

acquired and held it. Instead of cancelling the note, or charging George with the money advanced for taking it up, he took a regular endorsed transfer of it, and so held it at the time of his death.

What was said by the Supreme Court of Pennsylvania, in deciding the case of *Haverstock vs. Sarback,* 1 *Watts & Sergt.,* 390,—a case not unlike the present, in the character of the proof that was offered,—applies here with entire fitness:—That loose declarations of a parent, that he intended an existing debt should be an advancement, not substantiated by writing, nor made to the child, nor assented to by. him, nor accompanied by any act, are not sufficient to destroy a debt secured by a legal instrument in full force, and to change it into a gift by way of advancement, whether offered by the son to defeat the recovery of the debt, or by the representatives of the parent against the son to defeat his claim to a distributive share. See, also, *Levering vs. Rittenhouse,* 4 *Wharton,* 130 ; *Yundt's Appeal,* 13 *Penn. St.,* 575.

We shall therefore reverse the order appealed from and remand the cause for further proceeding.

The distributive share of the fund in Court, to which George W. T. Harley may be entitled, is claimed by parties claiming to be judgment creditors of his ; and such distributive share will, of course, be liable to any subsisting judgments against him, according to their legal priority, which were recovered and became liens upon his. interest or estate in the realty before it was converted into personalty by the sale under the decree. But what particular judgments may be subsisting and entitled to distribution by reason of the lien created thereby, if there be any such, this Court, on the present appeal, is not. called upon to decide.

*Order reversed, and*
*cause remanded.*

(Decided 13th January, 1882.)