## CUTLIFF *vs.* BOYD *et al.*, executors.

[This case was argued at the last term, and the decision reserved ]

1. Generally, where exceptions of fact are filed to an auditor's report, the report is *prima facie* evidence of the truth, and the plaintiff must overcome it; but where his report on the facts of a case is made without hearing both sides thereon, if it be legal to hear both, then such report is not *prima facie* evidence of truth on the issue as to which one side was thus excluded. Therefore, where the court sustained an exception to an auditor's report, on the ground that one of the parties was not permitted to testify before the auditor as to a particular issue, but the other party was permitted so to testify, it was error thereafter to charge that the auditor's report as to such issue was *prima facie* true.

2 A verdict in these terms, "We, the jury, sustain the auditor in regard to exceptions 7, 8, 9, 11 and 14," was a substantial compliance with the requirements of law that the jury shall find on the exceptions *seriatim.*

3. The verdict is supported by evidence, and would stand but for the error in the charge.

4. There was no error in charging that if notes were due prior to June, 1865, and were not sued on by January 1, 1870, they would be barred, unless there were some legal reason why the statute was suspended; nor as to the six year's statute of limitations.

5. There was no error in charging that, if the two distributees of an estate agreed that the will should be set aside, and that they would divide the estate equally, and that certain notes due by each of them were not to constitute a part of the estate, one of the distributees being the administrator, in a subsequent suit between them, such an agreement would be binding, and the other party could not claim that the notes were a part of the estate; but that, if the converse of the proposition were true, and they were to make such a division of the estate, and the notes of the respective parties were to be included, then it would be the duty of the jury to carry out the agreement.

6. There was no error in charging to the effect that the administrator of an estate could not of his own motion or volition, without any order of court, or without any accounting or settlement with the other distributee thereof, or without any agreement on the part of such distributee, take his distributive share and apply it to certain notes given by him.

7. Where a mother advanced money to her son and took notes therefor, *prima facie* such notes represented an indebtedness, and not an advancement, but this presumption was subject to be rebutted.

8. The charge as a whole was sound, just and impartial.

June 10, 1884.

Practice in Superior Court.  Auditors.  Verdict.  Statute of Limitations.  Contracts.  Administrators and Executors.  Charge of Court.  Before Judge STEWART.  Fulton Superior Court.  April Term, 1883

J. M. Cutliff brought complaint against Isaac S. Boyd and his wife, Mary L. Boyd, formerly Mrs. Holliday, widow of J. R. Holliday, as executor and executrix of said J. R. Holliday, deceased, on two promissory notes ; one dated May 25, 1868, due one day after date, by J. R. Holliday, to plaintiff or bearer, for $237.63 ; the other dated July 16, 1868, due one day after date, by J. R. Holliday, to plaintiff or bearer, for $75.00.  Defendants filed pleas, making, in brief, the following points : The general issue ; that Holliday was imbecile and incapable of contracting; that he was almost entirely blind and dependent upon others for information as to the contents of any writing, and was not in the habit of making contracts, except under the supervision of his wife and brother (plaintiff, who was his half brother) ; that if he signed the notes sued on at all, he did not understand their contents, and his signature was obtained by plaintiff by reason of the confidential relations between them ; that plaintiff was in the habit of endeavoring to get Holliday to leave him his entire estate, and pressed this purpose upon him in various ways, securing promises from Holliday when the latter was suffering from disease and incapable of understanding his rights and resisting plaintiff's influence, and of such promises he had no recollection whatever upon being partially restored ; that he was never more than partially restored in the years 1868 and 1869, and died in the latter year; that, at the time these notes were given, Holliday had no need to borrow money or renew debt, he having ample cash means, and being in the habit of lending money through his agents ; that plaintiff was one of these agents, and received on account of Holliday a considerable sum of money, for which an accounting was prayed ; that plaintiff kept the

existence of the notes sued on to himself until the death of Holliday, realizing that he was largely indebted to Holliday for sums received by him as administrator of the estate of one Lucinda Mabry, the mother of both plaintiff and Holliday; that in 1867 Mrs. Mabry died, leaving a large estate in real and personal property and in cash; that plaintiff administered on the estate, and without legal sales, disposed of the estates and property, and appropriated them to his own use, that plaintiff and Holliday were the sole heirs at law of Mrs. Mabry, who died without debts; that the amount in the hands of plaintiff due to defendants from the estate is about $6,000.00; that plaintiff would not be able to respond for this sum in an action therefor, and that the only chance of realizing upon the same is by an accounting in this action.

Plaintiff's attorneys acknowledged service on this plea, and consented that an accounting in regard to the estate of Mrs. Mabry be had in this suit, on the principles and practice of equity. Plaintiff filed an answer to the equitable plea of defendants, denying substantially all of the equitable rights and charges set out therein, and especially denying all fraudulent or improper means of obtaining the notes in suit from Holliday, or that the latter was unable to transact business, or imbecile, or that plaintiff imposed upon him, or that, as the agent of Holliday, he had received or misappropriated any funds or property of the latter, or that he had kept the existence of the notes in suit a secret; and he alleged that the larger note was given in renewal of a note from Holliday to him, made in 1858, for the purchase of a half interest in a plantation and stock thereon, and that the small note was given for a balance in money due him by Holliday. In regard to the Mabry estate, plaintiff alleged that he administered on it, sold the property according to the law governing administrator's sales, and that, after selling it, he appropriated the proceeds to his own use, in order that he might thus receive an equal share in said estate

with Holliday, inasmuch as he held, as administrator, notes of Holliday sufficient in amount to overbalance the sum received and appropriated by plaintiff.  These notes were made payable to plaintiff as administrator of J. Mabry, the husband of Mrs. Lucinda Mabry, his estate having passed to the latter, and these notes constituted part of the estate of Mrs Mabry at her death.

The case was referred to an auditor.  He found that, on an accounting between plaintiff and the estate of Mrs. Mabry, there was due by the former to the latter, for moneys received and undistributed, $12,308.69, on September 23, 1881.  He also reported that the administrator was not entitled to any credit on account of the notes of Holliday, because they ceased to be obligations of the latter, by reason of an agreement entered into between the two, to the effect that these notes should be destroyed, that the will which Mrs. Mabry had made should not be set up, and that Holliday and plaintiff should each take one-half of the estate, instead of Holliday's taking two-thirds and plaintiff one-third, as would have been the case if the will could have been established.  He also reported that these notes were barred by the act of 1869, the debts having been contracted and become due prior to June, 1865, and not having been set up until 1877 (giving the answer the effect of a suit).  He further reported that no evidence as to maladministration on the part of plaintiff had been introduced, and that there was no individual indebtedness from plaintiff to Holliday.  Plaintiff filed fourteen exceptions to the report, only six of which it is necessary to set out.  They are as follows :

(7.) "Because the auditor erred in finding that said notes of J. R. Holliday, the property of Lucinda Mabry at her death, and fully set forth in plaintiff's answer, are not chargeable to Holliday's estate, because barred by the act of 1869.—Plaintiff insists that, having these notes in his possession as the property of said estate, and having collected the assets of said estate before the bar of the statute

v 72-21

applied, he had the right to appropriate the share of said Holliday in said estate to the payment of his, the said Holliday's, notes."

(8.) "Because the auditor refused to allow plaintiff a credit for the note of J. R. Holliday and J. M. Cutliff, security, payable to Dennis Paschal, for $150.00, due December 11, 1859.—Plaintiff insists that, at the time he collected the assets of Lucinda Mabry's estate, said note was a valid debt against said Holliday's estate, and he had the legal right to charge it against the latter estate in his returns to the court of ordinary of Dougherty county."

(9.) "Because the auditor finds that plaintiff, as administrator of Lucinda Mabry, is indebted in the sum of $12,-308.69, or in one-half of that sum.—Plaintiff says that the auditor should have allowed him a credit for each and all of the Holliday notes, and should have calculated interest thereon from the dates of maturity respectively, to the time or times when plaintiff's returns to the court of ordinary showed that he had funds in hand collected on account of Lucinda Mabry's estate to discharge them, and that if this method had been adopted, plaintiff would have been indebted in no amount to defendants on account of said estate. Holliday's share in said estate would have been absorbed by his notes to said estate."

(10.) "Because the auditor refused to allow plaintiff's testimony, offered to disprove that of Mrs. Mary L. Boyd, as to the alleged contract to destroy the old notes and divide the estate equally between plaintiff and defendant's testator, it being considered that Holliday owed no debts, and that said Mrs. Boyd was the sole legatee."

(11.) "The report of the auditor was contrary to evidence in this, that, while he admitted plaintiff's answer to defendant's plea in evidence, he decided that said answer, so far as it related to the Holliday notes, had been overcome by the testimony of Mrs. Mary L. Boyd, and other corroborating evidence mentioned in said report."

(14.) "Because the auditor, in his alternative report,

finds that plaintiff is indebted to defendants in the sum of $297.79½.—Plaintiff says that the auditor should have allowed plaintiff a credit for the said Dennis Paschal's note, and also for the $1,500.00 note given in 1863 in full, and if he had so done, plaintiff would have been indebted nothing to defendants."

The court overruled the exceptions numbered 1, 2, 3, 4, 5, 6, 12 and 13, sustained exception number 10 as matter of law, and submitted numbers 7, 8, 9, 11 and 14 to the jury, as presenting issues of fact.

The evidence was conflicting, and need not be set out in detail. One leading issue of fact was, whether, in the agreement between plaintiff and Holliday as to the division of Mrs. Mabry's estate, the notes made by each of them were to be cancelled, and an equal division had of the balance; or whether each was to account for the amount of the notes due by him, and an equal division was to be made on that basis. The will made by Mrs. Mabry, which was claimed to have been destroyed and to have been set aside by this contract, gave to Holliday two-thirds of the property, and to plaintiff one-third, and the notes of Holliday and plaintiff were in like ratio. There was also some question as to whether these notes were taken by Mrs. Mabry as debts, or as representing advancements made to her sons.

The jury found the following verdict:

"We, the jury, sustain the auditor in regard to exceptions 7, 8, 9, 11 and 14."

"We, the jury, find for the defendants one hundred and sixty-three dollars and eighty-six cents."

Plaintiff moved for a new trial, on the following among other grounds:

(1.) Because the verdict was contrary to law, evidence and equity.

(2.) Because the court, after reading exception 7 to the auditor's report, charged that *prima facie* the finding of the auditor on that point would be correct.

(3.) Because the court, in referring to the notes, receipts and certificates given by Holliday to Mrs. Mabry, charged as follows: "Find if any suit was instituted upon them before January, 1870. If not, I charge you they would be barred."

(4.) Because the charge of the court on the subject of the statute of limitations and the act of 1869 was not applicable to the case.—According to defendants' claim, from the evidence, the notes, receipts and certificates of Cutliff and Holliday to Lucinda Mabry were cancelled by agreement, while plaintiff claimed that the agreement was that, as administrator of said Mabry, he was to collect the balance of the assets and retain a sufficiency to make his distributive share equal to defendants' testator.

(5.) Because the charge of the court directed the attention of the jury to the statute of limitations and the act of 1869 as the controlling question; whereas, plaintiff insists the controlling question was the terms and nature of the agreement between plaintiff and defendants' testator as to the division of Mrs. Mabry's estate.

(6.) Because the court, after reading exception 9 to the auditor's report, charged as follows: "Now, if you find that these Holliday notes are part of the estate, then you would find against this exception, and would make your calculation, putting them into the estate, and find what would be the distributive share; but if you find, for any reason, against the Holliday notes, and believe he is entitled to his distributive share, then you would sustain exception 9."

(7.) Because the court, after reading exception 8 to the auditor's report, charged as follows: "Well, if you find that he did appropriate portions of this estate in settlement of the debt, and if he had a right to do it under the rule I have given you in charge, you find in favor of that exception; but if you find the converse to be true, you find against it."

(8.) Because the court, after reading exception 11 to the auditor's report, charged as follows: "Now, the same rule

would apply, gentlemen, as to whether you find for or against that exception."

(9.) Because the court charged as follows: " Now, if it appears from these notes that they were given prior to June, 1865, or if it appears they were not sued upon, or some other legal reason given why the statute was not suspended, and if not sued upon by the first of January, 1870, they would be barred, and could not afterwards be enforced at law, unless there was some reason shown why the statute was suspended. Now, it will be for you to say, as a matter of fact, when were these notes made. Find when they were sued upon, and whether or not they were barred before any suit was brought, either by bringing a suit or filing a cross action of set-off or suit by bill." —Plaintiff insists that the evidence shows that, as administrator of said Mabry, he had collected the assets before the bar of the act of 1869 applied and he was not required to bring suit to enforce the collection.

(10.) Because the court charged as follows : " But I charge you, gentlemen of the jury, that the plaintiff could not, of his own motion or volition, without any order of court, or without any accounting or settlement with Mr. Holliday, or without any agreement with Holliday, take his distributive share and apply that to the liquidation and settlement of these notes."

(11). Because the court erred in charging the jury, in respect to exception 9, that " the finding of the auditor is *prima facie* true, as before stated to you."

(12.) Because the court charged as follows : " If that is true, if they agreed that the will be set aside, and were to divide the estate equally, and if their respective notes were not to constitute a part of the estate, the plaintiff could not plead it now, if he made such an agreement. But if the converse of the proposition be true, that they were to make such a division of the estate, and the notes of the respective parties were to be included, if such was the agreement, then it will be your duty to carry it out."

(13.) Because the court erred in putting more strongly and pointedly to the jury defendants' theory of defence than plaintiff's claim, to the prejudice of plaintiff.

(14.) Because the court charged as follows : " That is to say, if you allow these Holliday notes, and should find in favor of the notes sued on, then, if you find that there is still something due, and find there is more due by plaintiff as administrator than these notes sued on, you will find in favor of defendants for that amount; but if you do not allow the Holliday notes, and still find that the distributive share of the estate is more than these notes sued on, then you will find what excess is in favor of defendants, and for that sum against this plaintiff."—Plaintiff insists that the conclusion of the court in the first clause of this sentence is incorrect, and that the finding would be legally in favor of the plaintiff.

(15.) Because the verdict was not returned on each exception of fact *seriatim.*

The motion was overruled, and plaintiff excepted.

R. N. ELY; GEO. N. & D. P. LESTER, for plaintiff in error.

HILLYER & BROTHER , COX & HAMMOND, for defendants.

JACKSON, Chief Justice.

Cutliff sued Boyd and wife on two notes given by Holliday, on whose estate the defendants administered under his will, Holliday having been the first husband of Mrs. Boyd.    The defendants pleaded *non est factum* or its equivalent, invalidity of the notes on account of imbecility of body and mind of Holliday when apparently given, and thereby fraud and imposition on Holliday by Cutliff, his half brother, in procuring his signature to them, if given by him at all in that weak condition of body and mind, and a set-off against Cutliff in equity, because he owed Holliday more than the notes, by reason of having admin-

istered on the estate of Mrs. Mabry, the mother of both, and being thus indebted to Holliday his distributive share of that estate. The latter plea, in regard to the set-off, was submitted to Col. Moses, as auditor, and he reported thereon. The plaintiff, Cutliff, excepted to that report on fourteen grounds, the 1st, 2d, 3d, 4th, 5th, 6th, 12th and 13th of which were overruled by the court on legal grounds; the 10th was sustained on matter of law, it being the refu-sal of the auditor to hear Cutliff's version of an agreement between his brother, the deceased, and himself, which had been testified to by Mrs. Boyd, one of the defendants, in rebuttal of her testimony about that agreement; and the 7th, 8th, 9th, 11th and 14th, being issues of fact, were sub-mitted to the jury. On the trial, the auditor was sustained by a verdict of the jury on all five exceptions, but in one verdict thus: " We, the jury, sustain the auditor in regard to exceptions 7, 8, 9, 11 and 14;'' and the jury also found for defendants one hundred and sixty-three dollars and eighty cents, in a separate general verdict. A motion was made for a new trial on various grounds therein set out; it was denied, and error is assigned on that denial.

1. On a very careful examination of the whole record, and all the rulings of the court therein and charges to the jury, we are unable to detect but a single error, and that is the charge in the 11th ground of the motion, that the auditor's report is *prima facie* evidence of the truth, and the plaintiff must overcome it. Unquestion-ably, such is the general rule. Code, §3097. But where his report on the facts on trial of an exception thereto is made without hearing both sides thereon, if it be legal to hear both, then such report is not *prima facie* evidence of truth on that issue. In this case, the tenth ground of ex-ception to his report was sustained and is not excepted to. The legal point was there decided, that Cutliff was a competent witness in rebuttal of Mrs. Boyd's account of .what transpired between Holliday and Cutliff in respect to their mother's estate, and in what manner it was to be

divided, and in respect to other matters touching that estate; but the auditor had held that he was not competent. So that the auditor had rejected competent testimony as to the true agreement between the brothers on an issue of vital importance in the case, and had heard only one side thereon, when he ought, in law, to have heard both. The dispute between them was, whether the brothers agreed, inasmuch as their mother's will was lost, and in consideration that neither would set it up or seek to do so, to divide the estate equally, each paying the notes he owed the mother, or whether those notes were not to be counted against either, and the estate was to be divided without regard to them. Mrs. Boyd swore one way, Mr. Cutliff another, on that issue before the jury, where Cutliff was allowed to be heard; and yet, what Col. Moses reported on the same issue, where nobody but Mrs. Boyd was heard upon that issue, the court charged the jury was the truth *prima facie*, thus giving one side, on such an issue, that decided advantage of the other.

It may be that the verdict turned on that charge. It may be that the jury said, "well, here are two respectable people, both interested, one swore one way and the other differently, but the judge says that what the auditor says is the truth, unless overcome by Cutliff, and as Mrs. Boyd's word is as good as his, we will let the auditor's report stand." We are particular in saying "it may be" that this controlled the jury, because the verdict may have rested on the issue of the statute of limitations barring the collection of Holliday's notes to his mother; in which event this issue would have been immaterial, or it may have rested on this very issue upon the letters which Cutliff wrote to Ray and Hammond, giving the preponderance to Mrs. Boyd as the correct version of the agreement, as well as other circumstances looking that way. Yet the charge was error; it was upon an issue material in the case; that issue may have controlled the verdict; the erroneous charge may have controlled the

finding on that issue, and therefore it is safer to remand the case for a new hearing. It will be seen from the record that the order itself, setting down these exceptions of fact for a hearing, follows §3138 of the Code, which declares that "the report, when finally accepted, shall be admitted as evidence to the jury, with such instructions as to the effect to be given to it as the court shall give, under the circumstances of each case." This provision was wisely inserted in the statute, doubtless to guard against just such a state of facts as this issue presents, that is, where the auditor ruled out competent evidence, and failed thus to hear all the facts. The error is the refusal to grant the new trial, not on the 6th ground of the motion,* which refers to the 7th exception, which is as to the limitation act of 1869, but on the 11th ground of the motion which refers to the 9th exception, which is on the issue of whether or no Holliday's notes should be paid to Mrs. Mabry's estate before he got his half, or he should get half without counting them under the agreement.

2. Though the verdict is one, yet it specifies each exception by number, and is substantially in compliance with law.

3. The verdict is sufficiently supported by the evidence to stand, but for the error above alluded to.

4. The charge on the subject of the statute of limitations, both the 6 years' statute and that of 1869, is not erroneous.

5. So on the subject of the effect of the agreement to set aside the will and divide the estate accordingly as the jury found the truth to be touching that agreement, the charge is right. The consideration is ample to support the mutual promise.

6. So in regard to the right of the administrator of Mrs. Mabry, Cutliff, to settle up that estate with Holliday without his consent or the adjudication of some court, surely the charge must be the law. Code, §§2598, 2599, 2600; Perry on Trusts, 427, 480.

*See No. (2) in report.

7. So in respect to whether the notes were debts. or advancements. *Prima facie* they are debts (23 *Ga.*, 533), though it may be shown that they are advancements. *Ib.*

8. The entire charge appears to us sound. just. impartial, covering the issues plain enough to be easily understood by the jury, and in all respects as it ought to be except in the slip which the judge made in overlooking the fact that the tenth exception to the auditor's report had been sustained, and thus he had not, on an important issue of fact, heard material evidence himself, and thereby had not reached a conclusion thereon, so as to make that conclusion any evidence of the truth. On this error. and this alone, a new trial is awarded, reluctantly. at least by myself, because I cannot well see how it can be to any great extent otherwise, under the statute of limitations, when tried again, unless something not now appearing be made to appear.

Judgment reversed.