### GEORGE M. LODGE v. FRANCES S. FITCH.

FILED NOVEMBER 16, 1904.    No. 13,014.

1. **Advancements.** To constitute an advancement as defined in section
   37, chapter 23, Compiled Statutes, 1903, it is necessary either
   that the ancestor express in the gift or grant his intention that
   it be an advancement, or that he charge it in writing as an ad-
   vancement, or that the child or other descendant acknowledge in
   writing the gift or grant as an advancement.

2. ———. A debt from an heir to an ancestor may be converted by
   the ancestor, with the consent of the heir, into an advancement,
   but when such debt is evidenced by note or bond this fact raises
   a strong presumption that the transaction was intended as a
   loan and not as an advancement.

3. **Evidence examined, and *held* insufficient to show that a promissory
   note executed by a daughter and her husband to the father
   was intended as an advancement.**

ERROR to the district court for Wayne county: JOHN F.
BOYD, JUDGE. *Affirmed.*

*Frank M. Northrop* and *M. D. Tyler,* for plaintiff in
error.

*A. A. Welch, contra.*

OLDHAM, C.

This is an action on a promissory note executed by
George M. Lodge and his wife, N. S. Lodge, to Nathaniel

Smith, the father of Mrs. Lodge. The note was indorsed for collection by the payee to the plaintiff in this cause of action. The answer in the court below is that the money received upon the note sued on was paid and received as an advancement by Nathaniel Smith to his daughter, Mrs. Lodge. Mrs. Lodge had departed this life before the institution of the suit, and for that reason was not made a party defendant in the court below. The case, by agreement of parties, was submitted to the court, without the intervention of a jury, and a judgment and finding were entered in favor of plaintiff, and defendant brings error to this court.

There is little disputed testimony in the record, and the controversy arises as to the sufficiency of the evidence to show that the note in suit was given by Nathaniel Smith to his daughter as an advancement. The undisputed facts in the record are that Nathaniel Smith was a retired minister of the gospel at the time the note in suit was executed, was past 80 years of age, and had an estate consisting mostly of money; that he loaned this money to his children, taking notes, with interest reserved, from time to time; that in 1881 the defendant and his wife borrowed $150 of Mr. Smith, and gave a note to evidence the indebtedness; that in 1882 Mr. Smith insisted on their taking $500 more of his money. The defendant testifies that they did not need the money at that time, and hesitated to take it, but that Mr. Smith claimed that there was no probability that he would ever want the money during his lifetime. Accordingly, the defendant and his wife executed a note for the $500, and received the money. Later the note of $500 and $150 were both put into one note bearing 7 per cent. interest, and payable to Nathaniel Smith or his administrator 5 years after date. In 1889 the note in controversy was given by request of Mr. Smith, because he had lost or mislaid the former note. The first $650 note was given in response to a request contained in a letter written by Mr. Smith to his daughter from Geneseo, Illinois, on January 1, 1889. The communica-

tion is quite lengthy, and only the portion of it bearing on the execution of the note need be set forth. This portion is as follows:

"Inclosed in this I will send you a note embracing the other notes, putting the whole interest at 7 per cent. as you only have $650. I should like to furnish you $500 or more as soon as Alice (another daughter) pays in on her notes. But I want you to see to it that it is put where it will do you some good. If you have to, invest in the savings bank note. The bank here only allows four per cent. paid, sincerely that would be better than nothing. In my will I have not designated anything to the mission boards of the Congregational church, the foreign and home boards, but I thought I could do better for the children and just as well for the boards by requesting them to give one per cent. of their inheritances to the boards after I am gone. By doing this annually they would remember their legacy, and from whence it was derived. I have written to Frances (another daughter) about this. She acquiesced in it. I shall write to all on this point and wish your reply. I thought if seven per cent. could be paid while I am here, one per cent. could be easier done after I am away. What a pity Leander has so much money. He cannot find any place for a home. You and Mr. Lodge can sign this note and return it, and I will send these (the former notes) marked paid. I remain, Your father, Nathaniel Smith."

On the 9th day of January, 1889, Mr. Smith directed a communication to the defendant George M. Lodge, concerning the note in controversy, as follows:

"Yours postmarked the 7th was received here the 8th, enclosing note. The note was signed all right, but what has become of it is more than I can tell. I have hunted my room all over. It seems I must have been very careless. It is one of the greatest mysteries I have ever tried to understand. So, I have concluded to write another note for you to sign. I know it is asking for a great deal of credulity from others, but if that note is found I will send it to you, signed, paid by duplicate, and you can keep this

letter as good testimony in the case.  I do not see but that I shall have to give in that my memory is failing.  P. S. You will understand that the notes I have taken of children for money loaned will be considered as so much cash, and will at my death be returned to you in the room of so much cash.  This is to save you the necessity of sending the money to pay them and having it returned to you again. I shall endeavor to even up the inheritances as soon and as far as possible.  My funds are now in the hands of my children except $1100.  I am trying to get things in a satisfactory condition to leave."

At the time of the suit on this note Mr. Smith was still living at the age of 92 years, and gave a deposition which consisted mostly of categorical answers to direct questions propounded to him.  After answering the interrogatories that he had indorsed the note to the plaintiff for collection, in answer to the question, "For what was that note given by Mr. and Mrs. Lodge?" he answered, "For money that I had loaned to them."  In answer to the interrogatory, "State whether the money for which this note was given was an advancement or gift from you to your daughter Mrs. Lodge, or was intended as such," he answered, "It was not intended as a gift or advancement."  In answer to the interrogatory, "State whether or not you ever made an advancement to your daughter Mrs. Lodge, or to any other children of yours," he answered, "I made no advancements or gift to any of my children.  I made loans to them, but no gift."  This constitutes all the material testimony contained in the record touching on the question at issue.

Section 37, chapter 23, Compiled Statutes, 1903 (Annotated Statutes, 4937), provides:  "All gifts and grants shall be deemed to have been made in advancement, if they are expressed in the gift or grant to be so made, or if charged in writing by the intestate as an advancement, or acknowledged in writing as such by the child or other descendant."  Under this section of the statute, the essential elements of an advancement are, first, that they

are expressed in the gift or grant to be made as such; or, second, that they are charged in writing by the intestate as an advancement or acknowledged in writing as such by the child or other descendant. Now, it seems clear from the testimony before set forth that the original delivery of the $150 and $500, for which the note in suit was subsequently given, was never expressed in any gift or grant to have been intended as an advancement, nor can we, by any fair interpretation of the letters to either Mr. or Mrs. Lodge, say that either of these letters contained a charge in writing made by the intestate against the share of Mrs. Lodge in his estate for the amount of the note; nor is there any written acknowledgment from Mrs. Lodge of the receipt of this $650 as an advancement. In fact, the ancestor was not dead at the time the suit was instituted, nor is there any evidence as to whether he had or had not disposed of his estate by will. While it is true, as contended by counsel for defendant, that a loan from an ancestor to an heir may be converted by the ancestor into an advancement, yet to establish this fact it must be made to clearly appear that the ancestor expressed the intention to change the loan to an advancement, and that the heir acquiesced in the change. *Miller's Appeal,* 40 Pa. St. 57. Neither of these requisites is made to appear from the evidence in the instant case. It is a rule that, where the parent or ancestor receives such evidence of an indebtedness as a bond or a promissory note, the presumption is in favor of the transaction being construed as a debt, and not as an advancement, and, while this presumption is not absolute, it can only be overcome by clear and satisfactory testimony. As said in *Speir v. Speir,* 14 N. J. Eq. 240:

"A charge of the money or chattel advanced by the father to the son, or a memorandum of the fact that the sum advanced was intended as a gift, is received as evidence of the fact. Sometimes a bond or note is taken; but that converts the intended advancement into a debt from the son, unless a memorandum is elsewhere made of its real character."

It seems clear to us, in conformity with this view, that there is no competent evidence in the record to sustain defendant's theory of an advancement. The money in the first place was not given to defendant's wife, but, when furnished, its delivery was evidenced by a promissory note, bearing interest, payable to the ancestor or his administrator. If the original loan had been intended to have been converted to an advancement, the note would not have provided for its payment to the administrator of the ancestor. This, as well as the testimony of the ancestor, for whatever it is worth, leads us to the conclusion that the evidence sustains the judgment of the trial court, and we therefore recommend that the judgment of the district court be affirmed.

AMES and LETTON, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.