BARRON *et al.* v. BARRON, administratrix, *et al., et vice versa.*

506

Nos. 11003, 11004. DECEMBER 11, 1935.

*Smith & Smith,* for plaintiffs in error.

*Feagin & Feagin* and *Joe Ben Jackson,* contra.

BELL, Justice. W. W. Barron Sr. died intestate, in April, 1932, leaving as his heirs at law his widow, Mrs. Ida M. Barron, and five children, as follows: Miss Ben Barron, Mrs. Kate Ross, Mrs. Annie B. Childs, J. J. Barron, and W. W. Barron Jr. Mrs. Ida M. Barron and Miss Ben Barron were appointed administratrices. In their capacities as such they brought a suit against the other heirs at law, for direction and for other equitable relief. The petition prayed that the heirs be required to interplead in regard to their respective interests in the estate, in view of certain contentions as to debts and advancements. The court ordered an interpleader as prayed, and all defendants filed answers. On the trial the court submitted the following issues, among others, by questions to be answered by the jury: (1) The market value of the estate, exclusive of notes held against heirs. (2) The amounts due to the estate by the two sons, J. J. Barron and W. W. Barran Jr., respectively. (3) Whether these amounts were due upon loans made to his sons by the intestate, or were advancements to be accounted for in distribution. The amounts claimed against the sons were represented by notes which they had separately executed to their father during his lifetime, and it was the contention of the administratrices and the other heirs at law that these sums should be charged as advancements, while the sons contended that they were debts from which they had been discharged in bankruptcy respectively, with the exception of such notes as

were executed after bankruptcy. The notes provided in express terms for the payment of interest and attorney's fees, and contained waivers of homestead. The notes made by J. J. Barron were secured by a deed to real estate. The petition with exhibits showed that the estate, exclusive of the notes, was worth approximately $7000, and the jury found its value to be about $6000. The jury also found that the notes represented advancements, and not debts, and fixed the amounts at $1762.58 as to J. J. Barron, and $4480.48 as to W. W. Barron Jr. These two parties, who had filed separate answers, joined in a motion for new trial. The administratrices moved to dismiss the motion for new trial, on the grounds that the claims of these defendants "were dependent upon different evidence in the record, that separate questions were propounded to the jury as to their separate claims, and separate findings were made by the jury in the verdict as to their separate claims, and that a joint motion for new trial would not lie, but that it was necessary under the law for W. W. Barron and J. J. Barron each to file his separate motion for new trial in said case, and that the joint motion as filed by them was a nullity." The court overruled the motion to dismiss, but refused to grant a new trial. J. J. Barron and W. W. Barron Jr. excepted to the overruling of their motion for a new trial, and the administratrices brought a cross-bill of exceptions assigning error on the overruling of their motion to dismiss. Other facts will be stated in this opinion.

There was no merit in the motion to dismiss the motion for a new trial. The record shows but one case, and it was permissible for the defendants, similarly situated, to file a joint motion for a new trial, even though separate answers had been filed by them. Butler v. Lewman, 115 Ga. 752 (42 S. E. 98) ; East Atlanta Land Co. v. Mower, 138 Ga. 380 (75 S. E. 418) ; Higdon v. Bell, 144 Ga. 485 (87 S. E. 385) ; Jefferson Banking Co. v. Trustees of Martin Institute, 146 Ga. 383 (91 S. E. 463) ; Estill v. Estill, 147 Ga. 358 (94 S. E. 304) ; Powell v. State, 152 Ga. 81 (108 S. E. 464) ; Moore v. Adams, 153 Ga. 709 (113 S. E. 383) ; Washington v. State, 159 Ga. 416 (125 S. E. 836) ; Carolina Portland Cement Co. v. Charles N. Walker Co., 163 Ga. 33 (135 S. E. 503) ; Citizens & Southern Bank v. Palmer, 164 Ga. 557 (139 S. E. 27) ; Young v. Cochran Banking Co., 166 Ga. 877 (144 S. E. 652) ;

*Walden* v. *State*, 9 *Ga. App.* 584 (71 S. E. 945) ; *Ellis* v. *Geer*, 36 *Ga. App.* 519 (137 S. E. 290). This ruling is not contrary to decisions holding that where two or more cases are consolidated merely for the purpose of trial, they can not be reviewed jointly. Compare *Valdosta Guano Co.* v. *Hart*, 119 *Ga.* 909 (47 S. E. 212) ; *Averitt* v. *Simpson*, 147 *Ga.* 352 (94 S. E. 242) ; *Cutler* v. *Central Bank & Trust Cor.*, 147 *Ga.* 754 (95 S. E. 285) ; *Wall* v. *Mann*, 163 *Ga.* 42 (135 S. E. 407) ; *Jennings* v. *Longino*, 172 *Ga.* 696 (158 S. E. 565) ; *Beck* v. *Chenoweth-Holder Lumber Co.*, 170 *Ga.* 367 (152 S. E. 899).

The motion for new trial assigned error on the following excerpts from the charge of the court to the jury: (a) "Was the amount due to the estate of W. W. Barron Sr., by J. J. Barron, a loan or an advancement? Now that is a question of fact for you to answer. The plaintiffs in this case and the representatives of the estate of W. W. Barron Sr. contend that the amounts due by J. J. Barron to the estate of W. W. Barron Sr. were advancements made by his father to J. J. Barron, that they were advancements, and that he did not intend to collect those amounts, but he intended that J. J. Barron should account for them in the distribution of his estate. Now in passing upon that question you take into consideration all the facts and all the circumstances in this case; and if you reach the conclusion that at the time that these notes were given by J. J. Barron to his father, W. W. Barron Sr., if from all the facts and circumstances it was the intention that these amounts due upon these notes at the time they were taken were intended as a debt, and that W. W. Barron Sr. intended to collect in his lifetime, why then under those circumstances they would be debts. On the other hand, after considering all the facts in this case, and after considering all the circumstances in this case, if you reach the conclusion that W. W. Barron Sr. did not intend to collect those debts, but they were to be an advancement to J. J. Barron to be accounted for in the distribution of his estate, why then under those circumstances they would be considered in law advancements." (b) "Was the amount due to the estate of W. W. Barron Sr., by W. W. Barron Jr., a loan or an advancement? And on that question, after considering all the facts in this case and after considering all the circumstances developed in the trial of this case, if you reach the conclusion that W. W. Barron Sr. in-

tended to collect those notes from W. W. Barron Jr., that is, that he intended to collect them, why then under those circumstances they would be considered in law as debts; but if, from all the facts and circumstances in this case, you reach the conclusion that he did not intend to collect them, but intended for W. W. Barron Jr. to account for them in the distribution of his estate, why then in law they would be considered advancements." As to each of these charges the motion alleged: "Said statement was an incorrect statement of law, in that the court charged the jury that whether said notes represented loans or advancements depended upon whether the deceased 'intended' to collect in his lifetime; whereas the true test is whether or not there was such an understanding or agreement as would deprive the deceased of the right and power to collect in his lifetime. Said notes could not at the same time represent both valid collectible debts and advancements." The charges complained of were not erroneous for any reason assigned. It is settled law in this State that where money or property is transferred by a parent to his child, and is accepted, the question whether the transfer is to be treated as an advancement depends upon the intention of the parent at the time of the transaction, regardless of whether the child may have concurred in such intention. *Phillips* v. *Chappell,* 16 *Ga.* 16; *Weems* v. *Andrews,* 22 *Ga.* 43; *Bransford* v. *Crawford,* 51 *Ga.* 20; *Tuggle* v. *Tuggle,* 57 *Ga.* 520; *Holliday* v. *Wingfield,* 59 *Ga.* 206; *Ireland* v. *Dyer,* 133 *Ga.* 851 (67 S. E. 195, 26 L. R. A. (N. S.) 1050, 18 Ann. Cas. 544); *Parker* v. *Parker,* 147 *Ga.* 432 (94 S. E. 543); *Neal* v. *Neal,* 153 *Ga.* 44 (111 S. E. 387). Compare Nobles *v.* Davenport, 183 N. C. 207 (111 S. E. 180, 26 A. L. R. 1086); Re Palmer, 194 Iowa, 611 (190 N. W. 30, 26 A. L. R. 1097); Holland *v.* Bonner, 142 Ark. 214 (218 S. W. 665, 26 A. L. R. 1101); Day *v.* Grubbs, 235 Ky. 741 (32 S. W. (2d) 327, 72 A. L. R. 323). The instructions complained of in the present case were in accord with this principle.

■ The verdict, however, was contrary to the evidence, and a new trial should have been granted on the general grounds. As stated above, each of the notes provided for the payment of interest and attorney's fees, and contained waivers of homestead. As security for some or all of the notes by J. J. Barron, he made to his father a deed to land. The evidence showed three notes from this son, executed respectively in 1919, 1924, and 1931. J. J.

Barron had obtained a discharge in bankruptcy from all debts against him as of the date of May 12, 1922. The notes held against W. W. Barron Jr. were executed in the years 1919, 1924, 1927, 1928, and 1931. This son had received a discharge in bankruptcy as to all debts existing against him on April 26, 1927. The evidence showed no distinction in the intention of the father with respect to the notes held against each of his sons, notwithstanding a security deed had been executed by J. J. Barron only. The fact that the advances were represented by notes in the form stated, some of which were secured as indicated, raised a presumption that the transactions were intended as loans, and not as advancements. *West* v. *Bolton*, 23 *Ga.* 531; *Culliff* v. *Boyd*, 72 *Ga.* 302; *Glanton* v. *Whitaker*, 75 *Ga.* 523; Re Palmer, and Holland v. Bonner, supra. While the presumption may not have been conclusive, it was yet of such force that it could be overcome only by clear and satisfactory evidence. Code of 1933, § 113-1013; *Harris* v. *Allen*, 18 *Ga.* 177; *Boyd* v. *White*, 32 *Ga.* 530 (2); *Robinson* v. *Ramsey*, 161 *Ga.* 1 (129 S. E. 837); Harley v. Harley, 57 Md. 340; Lodge v. Fitch, 72 Neb. 652 (101 N. W. 338); Dawson v. Macknet, 42 N. J. Eq. 633 (8 Atl. 312); High's Appeal, 21 Pa. 283; Miller's Appeal, 40 Pa. 57 (80 Am. D. 555); Garner v. Taylor (Tenn.), 58 S. W. 758; Levering v. Rittenhouse, 4 Whart. (Pa.) 130.

The only evidence which could possibly tend to rebut the presumption in the present case will be found in the following statement: Miss Ben Barron testified that in 1929 her father dictated to her a list of the notes which he held against his sons, and told her to keep it. She further testified that in the "fall of 1931," she asked her father if the notes were good, and he replied that they were. She reminded him of a statement by an attorney as to "bankrupt notes not being good;" whereupon he said that, regardless of the opinion of any lawyer, the "notes were good," and "would come out of their [the sons'] part." On cross-examination the same witness testified as follows: "It seemed to be his idea that he knew more about the goodness of a note than the lawyer did; and the purport of the conversation was that he could collect those notes any time he wanted to—that these were good, collectible notes. He didn't say he could collect these notes any time he saw fit. He said they were good notes, and he didn't care what Martin or any other lawyer said, they were good." Mrs. Childs and Mrs.

Ross testified to similar conversations with their father. Each of these daughters had also executed a note to their father. Mrs. Childs testified that after making certain payments she told her father that she was sorry she could not finish paying the amount of her note, and that he replied: "That is all right, it will come out of your part." She further testified: "I was paying along on my note as fast as I could. I don't remember how much I owed father. I did not owe the full amount of the note, because I had paid all along on it until times got so bad I couldn't make another payment. He wanted my note and the note of Will and Jim all to be treated the same way." This particular evidence tended to show debts, rather than advancements. Mrs. Ross testified as follows: "When I went to the hospital and he let me have the money, I told him, 'Papa, I don't know when I will be able to pay you.' He said, 'You come down here and make a note.' I said, 'I don't know how I will ever be able to pay you then.' He said, 'Well, it will come out of your part.' I understood, in reference to my note, it was an advancement and so intended. I knew I had no other means to pay it, and I knew I couldn't pay it, and he said it would come out of my part. I don't know whether my father gave or loaned me the money. I was sick, and I was going to the hospital to be treated, and I didn't have the money to go on, and my mother said, 'I will let you have $100 to pay,' and I went on to the hospital, and I had to have an operation, and my father paid all the bills besides that $100; and I don't suppose he gave it to me, or else he would not have asked me for a note. He asked me for a note, to come down and he would write out a note and I could sign it, and I imagine he expected it to come back out of the estate, for I couldn't pay it, or his property sometime." Mrs. Childs testified that soon after the death of the intestate, in 1932, when the family were considering the condition of the estate, J. J. Barron, on examining the notes signed by himself, remarked: "Well, there is nothing for me."

It is recalled, however, that while the heirs at law consisted of the widow and five children, the entire estate exclusive of the notes was valued at only about $7000, whereas the notes held against the two sons alone amounted to more than this sum. The notes of W. W. Barron Jr., by themselves, greatly exceeded his own possible

distributive share, under any theory. Clayton Kitchens testified that shortly before his death the intestate made to the witness the following statement: "My boys have about broke me. . . I don't know what I will do. I have got a world of land and a lot of taxes to pay, and I haven't got any money. They have about broke me; they have got far above what they are entitled to. Ben" (that is his daughter) "has got some money, but she doesn't let them know it, because they will be aggravating her to death and get it and throw it away too." Witness testified: "That is exactly what he said. He said that they had got more than their share, more than they were entitled to from his estate, and Miss Ben Barron had money, but she dared not let them know it, because they would worry her to death to get it." It is unlikely that the intestate would have transferred as *advancements* such sums of money as nearly to break him, or as so greatly exceeded, as in the case of W. W. Barron Jr., the probable distributive share of the transferee; although it is true that the intestate might have considered his estate to be of much greater worth than it proved to be after his death. While declarations made by a parent subsequently to the transaction to be considered have in some cases been held admissible for the purpose of illustrating the intention of the parent at the time of the transfer (*Phillips* v. *Chappell,* 16 *Ga.* 16; *Wesl* v. *Bolton,* 23 *Ga.* 531; *Bransford* v. *Crawford,* 51 *Ga.* 20), there is no previous decision by this court to sustain the proposition that the presumption against advancements which arises from the documentary evidence in this case may be overthrown by such vague and equivocal statements by the parent as those detailed above, all being subsequent in date, by several years, to some of the notes, as well as to the discharges in bankruptcy. The statements that the notes were good and the amounts would come out of the sons' distributive shares could have been prompted by a feeling that the makers would not urge the discharges against their father or in the settlement of his estate. This, and the other circumstances noted, render it impossible to ascribe any considerable value to these statements as evidence of the parent's intention at the time of the transfers. While the evidence was admitted without objection, and its admissibility is therefore not decided, it is our opinion that the statements, when examined in the light of the circumstances, were insufficient to rebut the written evidence,

from the terms of which the transactions were at the time apparently treated as loans, as distinguished from advancements. In *Howard* v. *Howard,* 101 *Ga.* 224 (2) (28 S. E. 648), it was held that "Loose declarations made by a person shortly before his death, and evidently referring to property which he then owned, in the course of which he stated how as between his wife and his two sons he 'wanted' his lands to go after his death and his reasons for so desiring, are not admissible in determining whether or not a conveyance of land made years before to the two sons jointly was or was not intended as an advancement." From what has been said the verdict as to advancements was unauthorized, and the court erred in refusing a new trial. A further contention by the movants was that the verdict included duplications, in that in certain instances original and renewal notes were both charged in arriving at the amounts for which the sons were to account. The evidence did not demand a finding to this effect.

One ground of the motion alleged the disqualification of a juror. As a new trial is ordered for other reasons, it is unnecessary to pass upon this ground.

*Judgment reversed on the main bill of exceptions, and affirmed on the cross-bill. All the Justices concur, except Hutcheson, J., who dissents.*