BARRON *et al. v.* BARRON, administratrix, *et al.*

No. 11574. JANUARY 15, 1937.

*Smith & Smith,* for plaintiffs in error.
*Feagin & Feagin* and *Joe Ben Jackson,* contra.

ATKINSON, Justice. On interpleader between heirs at law of one who died intestate, in relation to distribution of an estate, several questions of law were decided by the Supreme Court. *Barron* v. *Barron,* 181 *Ga.* 505 (182 S. E. 851). The case again came on for trial, and the exception now is to a judgment refusing a new trial on motion by two of the heirs.

1. J. J. Barron, one of the movants, in 1921 executed a deed conveying realty to secure certain promissory notes aggregating $1440, payable to the intestate. J. J. Barron was discharged in bankruptcy in 1922. Subsequently he executed a note dated August 27, 1924, for $1562.32, payable to the intestate. The realty was sold in 1925, and the intestate realized $1050 from the

proceeds of sale. J. J. Barron contended in the interpleader case that this amount should be credited on the note for $1562.32, and that his interest in the estate should be charged only for the amount of this indebtedness after allowing credit for such payment. There was evidence tending to show that the note for $1562.32 was in renewal of the notes secured by the deed to realty. If the note last mentioned was in renewal of the former note executed before bankruptcy, and represented the same debt, the $1050 realized from sale of the realty should be credited on that note, and allowance should be made in favor of J. J. Barron for that sum in determining the amount of his indebtedness to be charged against his distributive share of the estate. It was therefore erroneous to charge the jury that no such allowance should be made if the intestate "applied it" on the original notes.

2. W. W. Barron Jr., the other movant, was also indebted to the intestate on certain promissory notes. In his intervention he alleged a partnership with the intestate under the firm name of W. W. Barron & Son; that the intestate "furnished the land and financed said business, and this intervenor furnished his services, and it was agreed that they should share profits and losses equally. At the end of the season the said deceased would have a settlement and deduct the receipts from the expenditures. If there was a surplus, it was divided; and if on the other hand, there was a deficit, this intervenor gave said deceased his note for his one half of the same. It was in this way that the greater part of the notes set out above originated. In making these yearly settlements, this intervenor was charged with one half of the amount invested in said business, including the cost of farming equipment, live stock, peach-trees, and improvements to the land and buildings. There has never been any settlement of intervenor's interest in said things, and all of the property and assets of said business was taken over by the personal representatives of said deceased as a part of his estate. Wherefore this interpleader prays that there be an accounting, and that he be allowed out of said funds on hand for distribution an amount equal to his interest in said partnership property." As a witness W. W. Barron Jr. testified: "When we would have those yearly settlements we would include the operating expenses for the year. That would include everything that was bought, every mule that was shod, every piece of wire bought

for the pasture, all ditches that were dug, terraces, cleaning up, and everything was put on that book. I was to have a one-half interest in those things that were bought." Jim Ridley testified, on cross-examination, that W. W. Barron Sr. "told me his son was half-interested in the business. He didn't tell me he owned half the land, but was half-interested in the peach orchard, half-interested in the profits." On redirect examination Ridley testified: "Q. Did you say he told you he was half-interested in the peach orchard, was half-interested in the profits? A. Half-interested in the orchard. They divided it." Miss Ben Barron testified: "I remember when my brother [W. W. Barron Jr.] was in the peach business with my father. . . My father has deeds to the land that the peach orchard was on." Mrs. Kate Ross testified: "I don't know anything about the business arrangement between my father and brother, only when they started out they had the peach orchard together. . . My father did not operate the Barnes place close to the peach orchard. . . That was not the peach orchard in which this partnership originally existed."

The judge charged the jury: "Now, W. W. Barron Jr. contends by his pleadings in this case that at the time of the death of W. W. Barron Sr. these notes should be credited with the sum of from $2000 to $2500 for his interest in personal property belonging to the partnership of W. W. Barron & Son; and he claims after the dissolution of that partnership that existed between him and his father that his father received the entire personal property belonging to that partnership, and that his interest, his half interest, in that partnership property was worth from $2000 to $2500, and he contends that these notes that I have just described to you are entitled to a credit at the time of the death, that is, on the date of the death of W. W. Barron Sr., of $2000 or $2500, as representing his interest in the personal property belonging to that partnership. Now, the plaintiffs in this case contend that W. W. Barron Jr. was not entitled to any credit at all for his interest in the personal property, because they contend that W. W. Barron Sr. had settled in full with W. W. Barron Jr. for his entire interest in that partnership property so far as the personal property was concerned; and that is a question of fact that you will have to pass upon under the law as given you in charge by the court, applied to the facts in evidence in this case." This

charge was not erroneous, as contended, "in that it was an incorrect statement of the contention of said W. W. Barron Jr., . . not only that he was entitled to credit for an interest in the personal property belonging to the partnership of W. W. Barron & Son, but that he was entitled to a credit for an interest in all of the property belonging to said partnership, and more particularly for an interest in a certain peach orchard; and movants say that it was prejudicial error to restrict the jury and permit them to allow him credit for an interest only in the personal property."

The judgment is *reversed* in so far as it refused J. J. Barron a new trial, and is *affirmed* in so far as it refused W. W. Barron Jr. a new trial. *All the Justices concur.*