### HARVY AND WIFE vs. CHOUTEAU.

1. An unattested will may be set up and republished by a codicil, not physically annexed to the will, but which is attested by a sufficient number of witnesses required by law to prove a will. The codicil is a part of the will brings it down to the date of the codicil, making the will speak of that date, unless a contrary intention appears.

2. A copy of a codicil executed in Louisiana, and which by the laws of that State is required to be kept in the office of a notary public, a copy only being attainable, is admissible evidence before the probate court.

Harvy and wife vs. Chouteau.

## APPEAL from St. Louis Circuit Court.

SPALDING & SHEPLEY, for appellant.

I. The will was not sufficiently proved; it was not present, and seen by the witnesses when they testified, though their depositions were taken in the neighbourhood of the original olographic will. It was in duplicate as was said, and only one is produced; suppose they did not agree. Both should have been produced and opened here; but such was not the fact.

II. The codicil was not sufficiently and legally produced. It was not shown to the witnesses nor present, though nothing prevented its production. They could not as subscribing witnesses, prove it, when it was exhibited to them it being in existence. Rev. C., p. 1081, sec. 18, shows that the original instrument must go with the commission to be exhibited to the witnesses.

3 vol. Stark. Ev., 1682—"to prove a demise of lands, according to the forms presented by statute, it is necessary, in the first place, to produce the will itself, &c."

1. Williams Ex., 188—a will is proved in common form when the executor presents it before the judge, &c , showing that it must be present.

Ros. Ev., 72—"in order to prove a devise of lands, the will itself must be produced; and exemplification or probate of the will is not evidence. Bullion's *Nisi Pri*, 246.

1 Phil. Ev., 496—"the best proof of the contents of a will is the will itself; and exemplification or probate is not evidence."

1 vol. Stark. Ev., 327-8—"the proof of a deed, &c., if by witnesses the instrument must be produced, or be proved to have been lost, &c." (sec. 137-8 state that the original instrument must be produced, if possible.)

The probate of a will is only a formal proof of the due execution of the same, according to the common law rules of evidence, and these rules require the production of the original, if it be in existence Statute on wills, secs. 20. 21, 28, show that the common law strictness, at least, was required.

III. The will proper (called olographic, because written throughout in the hand-writing of the testator) had no attesting witnesses, and was, and is, therefore, by the law inoperative, Rev. Code. 1078.

IV. If the codicil is duly proven to have been properly executed, and with the legal number of attesting witnesses, yet, this does not set up and establish a previous, unattested will, which is not present at the execution of the codicil. 1 Powell on devises, 105; 5, 6, 7, 8, 9, 10, note—2 Vernon, 597, Attorney General *vs.* Barnes; Cow. Rep., 384; 1 Shower, 69, Lea vs. Sibbs, page 88, opinion of court given against the will.

The above authorities are directly on the point·

The following cases of codicils attested, written on the same paper as the unattested wills, and held to be sufficient execution of wills. The wills were of course present at the execution of the codicils. 12 J. B. Moore. 2; Guest vs. Willersy, 3 Bing., 614, (13 Eng. Com. law, 72;) 2 Bing., 429; is the same case as last above; 3 Bing., 614 is Guest vs. Willersy; 1 Burr, 549; 3 Burr, 1775, the whole will must be present in the room at the time of execution. 16 Vesey, 167; 4 Dessaus, 305; 1 Cramp. & M. 42

In the above cases the original unattested will was present, and as it were, a part of the same instrument, afterwards written on the same paper and properly attested by the requisite number of witnesses.

1 Adolph & El., 423 (28, E. C. L. R., 111, 379,) Willeston vs. Robbins. In this case the note states the doctrine that an attested codicil will set off an unattested will; but the court does not decide any such point, nor was it before them. In the argument, one judge insists in his opinion, that such attested codicil would set up an attested will.

1 Powell on devises, 94 (19 Law Libr,) The whole will must be present in the room at the time of execution.

V. The decisions of the supreme court of the State of Missouri, do not cover this case, nor touch upon it.

3 Mo., 507, Graham et al. vs. O'Fallon, Ex'r, &c —that probate can be made of a copy; and the best evidence must be produced in case of lost will, &c., applying the general com. law rules of evidence. 4 Mo., 601, Graham et al. vs. O'Fallon, Ex'r, &c.

These decisions only assert that in the case of a lost will, no statutory provisions existed, and therefore the jurisdiction of probate court would be exercised according to the general common law principles of evidence, in the absence of any enactment.

VI. To set up an unattested will by a subsequent executed and attested codicil, is against the intent and spirit of our statute on wills. That requires three things:

1st. That the will shall be in writing, &c.

2nd. That it shall be signed by testator, with his own hand or hand of another in the presence of witnesses.

3rd. That wills shall be attested by two or more witnesses, subscribing their names in testator's presence.

1. The doctrine contended for by the appellee, dispenses with the third requirement of the statute; for in the present case the will was not present when the codicil was executed, but at a distant place.

2. Such a probate goes beyond the statute, which is strict for wise reasons, and its strictness ought not to have relaxed. If Dertrehan's will had been present, his mind would have been refreshed, as to its contents, and he would have probably altered or modified it.

How can it be one instrument and executed as such, when one portion of it was executed years ago, and is a thousand miles distant, when the residue is written now, and signed here? According to the spirit of our act, a totally separate and distinct instrument, made at a previous time, cannot, by a reference to it in another instrument executed afterwards at a distance be incorporated, so as to make it united as if originally executed in conformity to law. Certain matters, even by reference, be, as it were, a part of a will, viz: matters of description, of idiocity, &c., &c.; but the operative words which make the instrument a will, cannot be, without violating our statute.

3. One use of the subscribing witness is, to prove the sanity of the testator. 1st section of act on wills; 7 Mo. R. 589, Withington et. al. vs. Withington, p. 592; 1 Powell, 81, 82 and 95.

What evidence of sanity is there, meeting the requisitions of our law which requires two witnesses to the fact. Perhaps he made the olographic will when not of sound and disposing mind. Suppose he did, and deposited it in duplicate, at a distance from him; and that when during his last sickness, his mind was restored, he made the codicil, referring to the will, from the dim recollections of his hallucinations, as containing in part what he would wish to be his final disposition of his estate.

If the construction contended for, is to be put upon the statute, its requirements can be completely evaded. A man may make his unattested will, and, as in this case, leave it at a distance. He may then years afterwards, sign an attested paper, containing merely a reference to the other paper as his will: that is, the whole of what is properly the will—the final disposition of his estate, may be made and completed without conforming to the law. Without those guards and securities, which the law has thrown around the making of it, to protect fraud, deception, and undue influence, and to establish sanity and identity; and then, if the formal part and conclusion of it, to wit: "In testimony whereof I have hereunto subscribed, &c," he acknowledged and signed before witnesses, who can prove sanity then and there, the whole is a valid will.

Suppose Destrahan was insane at the time he wrote the olographic will, and deposited it, as, indeed, certain provisions therein seem almost to indicate. Is it the will of Destrahan, because he referred to it as his will on his death-bed?

The form of examination of wills is to be fully required in all cases. They are provided to protect, even at a time, when generally every possible safeguard and precaution should be thrown

around them. The testator is often helpless and feeble in body and mind; easily deceived and influenced; extremely liable to imposition from the cupidity of those about him; not unfrequently agitated by the terms of approaching death. It is a man so circumstanced that the law contemplates in its formalities of executing a will. It is an instrument, which it is not necessary that he should make, as the law has made ample provisions as to his successors in the ownership; in fact wiser than are generally made by testators. Yet some are permitted to make their own law in this behalf, provided they do it in the mode pointed out.

4. The subscribing witness is also to prove the identity of the testator; and yet, in this case he knows nothing as to whether he is the same man that executed the olographic will. He knows he made another instrument, but knows nothing of the will proper. He must subscribe to it in the presence of the testator, and yet he never saw it.

5. He must sign or witness by law in the testator's presence, also that there may be no mistake as to the instrument executed; for he attested it as a lost will, the testator being then present, and saying so, and seeing what is done. In this case the will was not there. The testator did not see the paper present and declared to the witness present, that it was his will, and see them attest. On the contrary, they merely attested his declaration, that he had once made a will. The statute does not authorize witnesses to attest an admission that there is a will, but to attest the will itself. The act requires the identity of the instrument to be established by two witnesses signed thereto, the testator present, acknowledging it as his will and seeing it. But here, there is not one witness such as the law requires. Nobody saw the testator sign. Nobody signed as attesting witness.

6. This mode of construing our statute is most loose and dangerous. It must apply to all cases, and when we generalize it, it is alarming, as well as most inconvenient. The formal will, executed according to law is more likely to be a better considered instrument than one written by testator without any such form. And then, it is much more likely not to contain the real intentions of the testator, if it may be thus informally executed at another and distant time and place.

GAMBLE & BATES, for respondents.

I. The codicil was well, and sufficiently proved.

II. The codicil, [which is itself a will, R. C., Tit. Wills, secion 50 ; 1 Wms. on Exrs. 7-8-9,] carried along with it the olographic will, as a component part of the last will and testament of the deceased.

III. But if it be supposed, that the olographic will, in technical strictness, is not a component part of the last will of the testator, still, the codicil, being well proved, sets it up and makes it available, as it would any other document referred to in the proved will, identified and authenticated, as containing a declaration of the testator's will and pleasure—his dying wishes.

I. The Rev. Çode, 1845, Tit. Wills, directs the mode of probate generally. It supposes that the original writing will be produced in all cases, whether the suit be taken before the court or clerk, or by commission sent out for that purpose. It makes no provision for extraordinary cases, as, where the will is lost or embezzled, or destroyed, in whole or in part. It provides no method of proving by copy ; a proving the contents by memory of witness ; or, a proving part of the contents, when the witness cannot remember the whole. Upon all these points, there is no statute law.

The statute rule is good and wise in all ordinary cases, where the will is made here in Missouri, and the original writing can be produced. But it is not the only rule, as has been often determined in this court. In the matter of probate of wills, as in the proof of all other facts, it is the doctrine of this court, that the best evidence in the power of the party, under the circumstances, must be produced. I. Graham et. al. vs. O'Fallon, Exr., of Mullanphy, 3 Mo. R. 407, this court adjudged that the last will might be proved by copy, or the contents by oral testimony. The same case was again before this court, 4 M. R., 33, and the same principle sanctioned.

Again, for the third time, the same case was before this court, the same principle again sanctioned, 4 Mo. R. 601 ; and that one witness was sufficient to prove the contents of the last will. And the will disposing of millions of dollars worth of property, was admitted to probate on such testimony.

It is adjudged by this court, 4 Mo. R. 211, that probate be granted of part of a will, so much as can be proved.   See Jackson vs. Jackson.

Again, in Dickey et. al. vs. Malichi, 6 Mo. R. 177, (184,) probate may be granted to so much of a will as can be proved, and one witness is sufficient to prove it.

Thus, it is plain, that this court while it considers the statutory rule obligatory in all cases to which it applies ; considers, also, that it does not apply to all cases.   We depart from the restricted letter of the statute, in pursuit of substantial justice—not an ideal notion of abstract equity, but substantial legal justice, conformable to the general code of law recognized and habitually admitted in this court.   We acknowledge the right to make a will, as the main object of the law ; and when it clearly appears that a will was made, and it is proved by lawful testimony, what that will is, we set it up and give it the sanction of law.

In this case, the codicil, though attested by four witnesses, was a notarial act.   By the law of Louisiana, it could not be had by a private party nor by the judge of probate here.   That the party tried to get it, and could not, is proved upon this record.   When it is proved upon commission, the statute requires it to be first exhibited to the judge, and by him attached and sent out with the commission.   The probate judge did the best he could : he attached to the commission and sent out for proof, the best thing and the only thing he could get; the material copy.   And so it is plain, that the proof of the copy, was the best evidence in the power of the party.

II. A codicil is nothing more nor less than a will, a little will, made in reference to some fomer will, and commonly designed to enlarge, limit or modify the former.   R. C., Tit. Wills, sec. 50 ; Wms. on Exrs. p. 7-8-9.

Publication by a testator sets up and constitutes a document, a will : publication of a codicil which referrs to a former will is a republication of such former will. 1 Wms. on Exrs. 104-8-9.

Let it be borne in mind that this olographic will, was, at the testator's domicil in Louisiana, a legal, genuine, sufficient will ; and that it was reasonable and right for him to refer to it and treat it as such.   Still, it is admitted that the olographic will cannot be set up here, independently and separately, as the will of Destrehan.   But it is insisted that it is set up and made available, as parcel of the last will and testament of Destrehan, by being referred to, re-published, re-affirmed and insisted on by the testator, in his codicil, which is executed and proved according to the forms and principles of our law, as administered in this court.

The codicil contains no export, independant matter : it has no useful or practical existence, but in reference to and in connexion with the original will.   Its only expressed design is to modify and conform to the personal wishes and opinions of the testator—the provisions of the original. To set up the codicil alone, therefore, would be a mere mockery of the dead man's known wishes, and would exhibit the law as ingeniously trifling with words and phrases ; but heedless of the plain sense and substantial justice of the matter to be determined.

It is objected that the instruments are not physically connected, and that, therefore, that the second cannot establish the first.   I answer, that the mere corporal annexation of the papers, by sealing, serving or pinning, without internal reference, would be very inferior and doubtful evidence of the true intent and meaning of the testator ; and would be subject to be wholly destroyed, by a bare severance, which design or accident might easily accomplish.   But the moral and mental connection, the intellectual connection, or rather, unity of the two papers, can never be subject to doubt or question, as long as the codicil remains.   And that is almost indestructable.   It was a record at first, being a notarial act—then probated as a will in Louisiana—afterwards proved here, according to the forms of our law.

It is objected that the will was not present when the codicil was made, and cases are cited to show that when a will is written on separate sheats, all the facts must be present to be executed and attested.

I may not understand this : if I do, it is already in part answered.   To further answer : .

1. Those cases refer to one entire instrument though written on different pieces of paper, and

all they mean is that the whole instrument and not a part of it shall be executed and attested.

2. Those cases though they require the presence of all the parts, do not require that they be seen, read and understood, then and there, by either the testator or the witness. It will suffice if they be on the table or in the room. And though not seen, their presence may be presumed from circumstances ! !

I forbear all further answer to this objection, not supposing that any one 'seriously believes that a codicil cannot be legally made without the actual physical presence of the original will. It seems to me to deny that the olographic will is part of the last will and testament of Mr. Destrehan, is to deny his right to make a will. Its identity is not disputed ; but if it were, it is fully proved—referred to unmistakably in the codicil ; probated in Louisiana, and verified here by Henry Chouteau's deposition.

III. If it were possible to doubt the second, surely it will be conceded that a man may, in making his will—and a codicil is a will, so refer to a document book or paper, which is not by itself in the form of a will, as to make it neccessary, in order to effectuate the undisputed will, to have recourse to the document, book or paper, and adopt its terms and conditions.

Surely a man may devise a tract of land to his children, to be held severally by them in such quantities and proportions as are marked upon a sheet which he has made and deposited with a friend for safe keeping.

RYLAND, J., delivered the opinion of the court.

From the record, in this case, it appears that, Nicholas Noel Destrehan died at his domicil in the parish of Jefferson in the State of Louisiana about the 16th day of June, 1848, having made his olographic will in duplicate, having also made his codicil.

The olographic will is thus called because it is written, entirely in the handwriting of the testator—this will was without any subscribing witness—one of the duplicates was inclosed, carefully enveloped, sealed and marked as the olographic will of said Destrehan, and forwarded by him to Mr. Henry Choteau of St. Louis. The other was carefully marked and sealed and deposited with Mr. Gaston Villars, the neighbor of the testator; the codicil was a notarial act, taken down in writing by Lawrence Richard Kenny, a notary public of the parish of Jefferson, in which the testator lived and died in the State of Louisiana.

This codicil was written down from the words dictated to the said Kenny as notary, by the said testator; the said Kenny writing as the words fell from the testator; it was signed by the testator and witnessed by Fergus Gardere, A. Villars, G. Villars, and L. R. Kenny, notary public—four witnesses. It begins by stating "I have made an olographic will, which is made in duplicate, one of which has been placed in the hands of Henry Chouteau, of St. Louis, in the State of Missouri, and the other deposited in the hands of Mrs. Gaston Villars, of the parish of Jefferson, one of my executors appointed by said will; I now declare it to be my last will, that the donation I have made to my son, Peter Nicholas Destrehan, of the share of my estate beyond his leigiti-

mate share, shall in case my said son should come within the limits of the State of Louisiana before his attaining the age of twenty-one years, I then give and desire in such case the donation or extra share of my estate devised to him, by my said olographic will, to the State of Louisiana, it being my wish and desire, that my said son, Peter Nicholas Destrehan, shall not come within the limits of Louisiana until he shall attain the age of twenty-one years, under the penalty of forfeiting in favor of the State of Louisiana, as aforesaid, that portion of my estate devised to him as aforesaid." Thus the said Nicholas Noel Destrehan dictated the aforesaid codicil to this said olographic will, to me, notary, in the presence of Fergus Gardere, Adolphe Villars and Gaston Villars, of this parish, of lawful age, witnesses expressly called by me, notary, to act as such; and having read the said codicil to the said testator in the presence of the said witnesses and in an audible and intelligible voice, the said testator declared, that he understood the same perfectly well, and that he persisted therein—in witness whereof the said Destrehan has signed these presents in the presence of said witnesses and me notary, at his residence, in this parish the day and year aforesaid, and the said witnesses and the notary have signed the same, done without interruption or turning aside to other acts, parish of Jefferson, Louisiana, the day and year aforesaid, original signed—Desterhan, Maincre, Fergus Gardere, Adolphe Villars, G. Villars, L. R. Kenny, notary public.

This will and codicil were admitted to probate in the State of Louisiana. By the laws of the State of Louisiana the original codicil being a notorial act, becomes deposited in the notary's office and forms a part of his notorial records, and as such, the notary is bound to keep the original, and is not by law permitted to give it to any one. A copy, therefore, can only be obtained.

Upon learning the death of Mr. Destrehan, Henry Chouteau, produced the package, inclosing the will, with the original memorandum in writing of the testator, with the seals unbroken before the probate court and which was opened in the presence of the said probate court. A duly certified copy of the codicil, together with the olographic will was produced in the probate court of St. Louis county; a *dedimus potestatum* was issued accompanied by a copy of the codicil to the State of Louisiana, and the same was proved by the witnesses who signed the original codicil.

The probate court rejected the olographic will and codicil, and would not suffer them to be probated. Henry Choteau, the executor, appealed to the circuit court, and that court decided that said codicil and

43

olographic will were duly proved and that both ought to be admitted to probate as the last will and testament of Nicholas Noel Destrehan; to this decision of the circuit court Harvey and wife excepted, and moved the court to set aside the judgment and grant them a re-hearing, which motion was overruled and Harvey and wife bring the case here by appeal.

From the above statement it will be seen, that the important questions are, will the proof of this codicil establish the will? Can an unattested will be set up and republished by a codicil not physically annexed to the will, but which is attested by a sufficient number of witnesses required by law to prove a will?

These are questions of weighty import and have demanded our patient consideration.

In the case of Brownell and wife vs. DeWolf, 3 Mason, 494; Mr. Justice Story, speaking of the effects of a codicil upon a previous will, says: "Upon this question, after the decisions which have been made, whatever may have been my original doubts if the question were new, I feel myself bound to declare that the subsequent codicil does not amount to a republication of the original will, so as to pass, the real estate, purchased in the intermediate period." It was expressly adjudged in the case of Acherly vs. Vernon, (Con. Rep., 381) more than a century ago, by Lord Mansfield, that the signing and publishing of a codicil by the testator, in the presence of three witnesses, was a re-publication of his will, and both together made but one will; and his decree was affirmed by the House of Lords."

"This decision appears to have been contrary to some previous authorities, but it was expressly recognized and acted upon by the master of the Rolls in the case of Potter vs. Potter," (1 Vez. 438.)

In Barnes vs. Crowe, (1 Vez. p. 486) the Lords Commissioners upon examination of all the cases considered, Acherly vs. Vernon, a decisive authority, and in Piggott vs. Waller (7 Vez., 98) Sir William Grant, after the fullest deliberation, held the doctrine, whatever might have been its original difficulty, now incontrovertible."

Justice Washington in the case of lessee of Musser vs. Every, says, a codicil amounts to a re-publication of the original will, and there can be no doubt, but that the register having received probate of the will, may afterwards receive probate of the codicil—3 Wash. C. C. Rep. 482. In the case of Movers vs. White, 6 John. Chan. Rep., 375, the codicil was endorsed and written on the back of the will. Chancellor Kent says, "I see no reason why the codicil, executed with all the solemnities required by the statute, was not a re-publication of the will, so as to

give effect to the devise to the parties to this suit, equally as if they had been expressly mentioned in the codicil."

In the case of Van Cortland vs. Kip, 1 Hill 593, Justice Cowin said, "it seems to me, that at this day it would be a violation of all reliable authority to deny, that a codicil duly attested to pass real estate, *would, per se*, whether it relate to real or personal property, operate as a re-publication of a devise, unless the, testator declare, that he does not intend the codicil to have that effect; he states, that the authority of the Attorney General vs. Downing, (Arnbeler, 571) was expressly repudiated in Barnes vs. Crowe, on a consideration of all the previous cases. To doubt upon the question at this day, would be to violate all rules for determining the force of judicial authorities." In the case of Goorich vs. Meredith, Lord Ellenborough, C. J., said, "as to the question, 'what the effect of a codicil is,' that has been settled in a series of cases, beginning with Acherly vs. Vernon down to Barnes vs. Crowe, and lastly, in a more recent case of Piggot vs. Moller.

"The effect of all these cases is to give an operation to the codicil *per se* and independently of any intention so as to bring down the will to the date of the codicil—making the will speak of that date, unless indeed, a contrary intention be shown, in which case, it will repel that effect. The codicil draws the will down to its own date, in the very terms of the will, and makes it operate as if it had been then executed in those terms."

In these cases the codicil was attached to the will, or wrapped up in the same envelope. In the case before us the codicil was made at a subsequent day, the olographic will had been written in duplicate, months before, and one of the duplicates was in St. Louis, in a different State, the other at Gaston Villar's residence; neither was present at the making of the codicil, nor did the witnesses to the codicil see the olographic will at the time they attested the codicil—the authorities, therefore, are said not to bear upon the case now before us.

Let us now examine this matter: if the codicil refers to the olographic will by its terms, by mentioning the manner it was made, (viz.) in duplicate—by naming the depositories of these duplicates—Henry Chouteau of St. Louis, and Garton Villars of the Parish in which the testator was an inhabitant, does not such evidence bear as strong evidence, showing which will was meant, which will was in the mind of the testator. as if the codicil had been annexed and pinned to the very sheet of paper on which the will had been written?

In the case of Barnes vs. Cowe above cited, Lord, commissioner, Eyre, said "the testator had inseparably annexed codicil to the will,

not by a wafer or wrapper, but by internal annexation." I cannot see, why the reference, to the olographic will in the case before us, mentioned in the codicil, is not as strong and as satisfactory as physical annexation.

In the case of Beal vs. Cunningham 3. B. Monroe Rep. 390, the court of appeals of Kentucky, decided, "that a codicil is a part of the will to which it is attached, or refers, and must be taken and construed together as one will—"one testament."

Here then is a very respectable authority, that "reference" is sufficient. I confess I see no good reason why it should not be. In cases like the present, the question of identity may sometimes arise. "Is this the will referred to?" But this can always be settled by the facts in proof.

I am therefore free to declare, that I can see no legitimate reason, why a properly attested codicil may not draw down to it, a previous made though unattested will, to which the codicil refers, upon its face, though not annexed by wafers or any other mode physically.

In the case before us the codicil states, that the testator had made his olographic will, in duplicate, had send one to Henry Chouteau of Saint Louis, the other to Garton Villars, whom he had made his executors.

From the testimony before the Probate Court, there was no doubt that the one sent to Chouteau was then present in court. The letter of the testator accompanying it, in his own hand writing in French was produced in court; the sealed package in which the olographic will was enveloped with the seals unbroken, was produced and broken open in court, the memorandum on the package in the hand writing of Destrehan, stating the contents of the envelope, all satisfy me unmistakably, that the one produced was the one alluded to and referred to in the codicil.

If the codicil had been attached by a wafer, to the original olographic copy sent to Chouteau, I presume, that there would have been no room for doubt. A list of decisions for more than one hundred and thirty years sustains this point. What is the difference between this wafer annexation of a codicil, which may not mention the previous will, otherwise than by reciting that "this is my codicil to my last will," and the case before us, where the fact of making his olographic will in duplicate, and the statement of the fact, to whom he had sent, the duplicates appear on the face of the codicil? In this case, the codicil by the manner it refers to the original olographic will, affords a specimen of internal annexation morally as strong if not stronger, than the physical annexation of wafer, wrapper and tape.

The counsel for the appellant says, that the law makes as good and oftentimes a better will, than the testators do, and that there is no great harm, or violence done, when the courts confirm the making of wills strictly within the provisions of the law. I agree with him in this opinion: but yet I cannot under my convictions of the law governing this case, do otherwise than conclude that great injustice might be done to individuals were the courts to be guided by such distinctions as direct them to avoid the shadow, notwithstanding they may overthrow substantial realities in arriving at their conclusions.

The counsel objected to the manner in which the codicil was proved in this case. A copy only was sent, and the witnesses prove it to be a copy; they prove the original, of which the copy was sent; I cannot tell, how else codicil can be proved in this case. The original is on file as a record in the Notary's office. There it must remain. No person can obtain it, a copy can be had. The Notary Public, in whose office the original remains as a record, is a witness to the original. He and the witnesses thereto prove the copy in this case.

If they swear it is a copy without having the original before them, it is a very loose manner of swearing, but yet it may be all right, for they may have compared it word for word with the original, sometime previously. The fact of its being a copy may be known to them without a doubt, and they prove the copy in this case.

However, this is but a minor point; and as the main question must be determined against the appellants, we will not dwell on this. It would do no good to either party to send it back for further proof in this particular.

The judgment of the circuit court is affirmed.