# CIRCUIT COURT NO. 2 OF BALTIMORE CITY.

Filed June 1, 1897.

JAMES A. GARY ET AL.,
EXECUTORS,
VS.
ANNIE F. CARSON, ADMINISTRATRIX, ET AL.

*Barton & Wilmer* for plaintiffs.

*Charles E. Hill, James M. Ambler* and *Isidor Rayner* for defendants.

STOCKBRIDGE, J.—

On October 2, 1893, Enoch Pratt executed his will, the seventh clause of which was in the following words:

"I give and bequeath the sum of twelve thousand ($12,000) dollars to be by my executors equally divided among the cashier, inside watchman and clerks of the National Farmers and Planters' Bank of Baltimore who are now in its service, provided they respectively remain in its service at the time of my death."

On the 15th of March, 1894, the testator made a codicil to his will by which he appointed Arnold S. Hyde as one of his executors in the place of Mr. Henry Janes, deceased, who was one of the executors named in the original will; revoked a devise to Mr. Janes, and then concluded the codicil in these words:

"In all other respects, except as modified by this codicil, I desire my said will to stand as originally written."

The question now presented to the court is the construction of the clause of the will above quoted in connection with the codicil by reason of the following facts. On the 26th of October, 1893, after the execution of the will, but before the execution of the codicil one of the clerks who had been in the service of the National Farmers and Planters Bank at the time of the execution of the will retired from the service of the bank, and his place was filled by the appointment of James E. Tate, Jr., one of the defendants; and on the 14th of May, 1894, after the execution of both will and codicil another of the clerks of the bank retired, and his place was filled by the appointment of the defendant, William M. Tucker. Mr. Pratt having died and letters testamentary having been committed by the Orphans' Court to his executors, some question has arisen as to whom payments should be made under the seventh clause of his will, and in what amounts. Are Messrs. Tate and Tucker either or both of them entitled to share in the division of the $12,000, and if not, is there any intestacy as to any part of the said sum?

There is no intestacy. In construing wills, Courts will always endeavor to so deal with them as to avoid a conclusion of intestacy if there is any proper ground therefor, and this is too familiar a doctrine to require the citation of any authorities. Here we have a devise of a lump sum to be divided among a clearly described class of individuals, who, whether they number five, twelve or twenty, are entitled to share in the division of it. The testator, had he intended otherwise, easily could, and doubtless would, have devised specific sums to the various employees of the Bank of the classes enumerated, but his failure to do so can be taken to mean, and only to mean, that it was his purpose that this entire sum should be divided among those coming within the described class. The entire $12,000 will therefore stand for division as hereafter determined.

It will be observed that the seventh clause, by its terms, establishes two tests with which all who are to share in the division of this fund must comply; they must have been in the employ of the bank "now"—that is, at the time of the execution of the will, on October 2nd, 1893, *and at the time of the death* of the testator. No one was entitled to share in the division who complied with only one of the requirements, and the suggestion that the will of a deceased speaks as of the date of death of the testator, is a proposition which will always yield when a contrary intent is manifest, as is here clearly the case. Therefore, those who were clerks in the bank at the time of the execution of the will, but retired before the death of the testator, as they gratify but one of the conditions are clearly not in the class to share in the division of the fund, and the same is true with reference to the defendant, Tucker, whose employment by the bank was not until after the execution of both the will and codicil, and who, therefore, could only gratify one of the conditions prescribed for this class.

The most difficult question in the case is with respect to the defendant Tate, who was not an employee of the bank at the time of making the will, but who was such at the time of the execution of the codicil, and in whose behalf it is urged that the legal effect of the execution of the codicil and the republication of the will effected thereby, is to draw down the will and make it speak as of the date of the codicil, viz: March 15th, 1894, at which date Tate was an employee of the bank, for if such be the effect of the codicil, Mr. Tate would meet both requirements prescribed by the testator, and therefore be entitled to share in the division of the fund.

The cardinal rule in such cases of course is that the intent of the testator is to govern, but that intent is not what may be conjectured or supposed to have existed in the mind of the testator, but that which is expressed by the language of the will.

Bingel vs. Volz, 142 Ill. 214.

And the will and codicil are to be construed together as one instrument.

Hutchins vs. Pearce, 80 Md. 446.

Thomas vs. Levering, 73 Md. 454.

With these two rules in mind, what is the effect of the codicil as regards the bringing of the will down in date and making it speak as of the date of the codicil, March 15th, 1894?

Lord Eldon in the case of Bowes et al. vs. Bowes et al., 2 Bos. & P. 507, announces the doctrine that the operation of a codicil is to effect a republication of the will, although holding that such had not been the effect in that case for the reason that a contrary intent of the testator was clearly manifest, and a few years later in the case of Goodtitle vs. Meredith, 2 Maule & S. 14, Lord Ellenborough, following the cases of Acherly vs. Vernon, 10 Mod. 518; Potter vs. Potter, 1 Ves. Sr. 438; Barnes vs. Crawe, 1 Ves. Jr. 486, and Piggott vs. Walker, 7 Ves. 98, lays down the doctrine in these words, "The effect of a republication is to give an operation to the codicil *per se*, and independently of any intention, so as to bring down the will to the date of the codicil, making the will speak as of that date, unless indeed a contrary intention be shown."

And nearly all of the American decisions since then have followed in the same line, and in nearly the same words; see Harvey vs. Chouteau, 14 Mo. 587, Linnard's Appeal, 93 Pa. St. 316; Brown vs. Clark, 77 N. Y. 375; McCurdy vs. Neall, 42 N. J. Eq. 336; Brimmer vs. Soher, 1 Cushing 131; Hawke vs. Duyart, 30 Neb. 149; Duncan vs. Duncan, 23 Ill. 364; Hobert vs. Hobart, 154 Ill. 610, and the same principle is recognized though not involved

directly in the case of Colt vs. Colt, 32 Conn. 423.

It is true that the principle was originally laid down to cover the cases which arose where the testator acquired real estate between the time of executing the will and the time of executing the codicil, and undoubtedly had its foundation in the endeavors of the Courts to avoid declaring an intestacy as to such real estate. But the principle announced by the various judges in the cases cited, does not limit the operation of the rule so as to confine it to property devised merely, but is amply broad enough to extend it to the devises, as well as the subject matter of the devise, and hence we find Chief Justice Shaw in delivering the opinion in the case of Haven vs. Foster, 14 Pick. 540, saying that "if the will be republished, then all the words contained in it and which have reference to time must be considered as applying to the time of the republication and not to that of the original will," and the Supreme Court of Pennsylvania have said that "the effect of a new publication is that all which the words embrace at the time when the new publication is made shall pass thereby; or to put it more clearly when a man republishes his will the effect is that the terms and words of the will should be construed to speak with regard to the property the testator is seized of *and the persons named therein* at the date of the republication, just the same as if he had such additional property, or such persons being *in esse* at the time of making his will, the conclusion from the fact being that the testator so intended. And this is a conclusion of law not to be contradicted by any supposed absence of intention on the part of the testator unless a contrary intent be manifested by something appearing in the codicil."

Coale vs. Smith, 4 Pa. St. 386.

Gilmor's Estate, 154 Pa. St. 523.

The present rule, therefore, which has arisen from the cases cited and others to the same effect is thus laid down in Williams on Executors, I Vol. 7th Am. Ed., p. 258.

"So far has the doctrine that a republication gives words used in the original will the same force and effect as they would have if first written at the time of the republication been extended, that it has been considered that

a bequest may extend to *any person* to whom the description is applicable at the period of republication, though not originally intended." And though in more cautious language Jarman is to the same effect when he says: "Constructive republication takes place where a testator for some other purpose makes a codicil to his will; in which case the effect of the codicil, if not neutralized by internal evidence of a contrary intention, is to republish the will."

1 Jarman on Wills, 6th Am. Ed., p. 151.

There are a few cases, it is true, which are not in harmony with this current of opinion, but the preponderance both in number and weight of authority is so decidedly in support of the doctrine that the effect of a codicil is to draw the will down and make the entire instrument speak as of the date of the codicil that I shall so hold, and Mr. Tate will be entitled to share in the division of the sum of $12,000, together with the cashier, inside watchman and clerks of the National Farmers and Planters' Bank, who both were such on the 15th of March, 1894, and at the time of Mr. Pratt's death, or the representatives of such as may have died since the death of Mr. Pratt.

A decree will be signed in conformity with these views, with the costs to be paid out of the estate.