## Louisville Trust Co., Etc., Executors of Theodore Harris, Deceased v. Southern Baptist Theological Seminary.

(Decided June 4, 1912.)

### Appeal from Jefferson Circuit Court (Chancery Branch, Second Division).

Wills—Devise to Seminary—Execution of new Will of Same Date as Old Will—Seminary not Entitled to Bonds Under New Will.— A testator by his will made in April, 1907, devised to the seminary $60,000 of mortgage bonds that had not defaulted in their interest, and directed his executor to deliver the bonds immediately after the probate of his will. After the will was made and in satisfaction of the devise, he delivered the bonds to the Seminary himself. About two years after this he rewrote his will, making some changes in it in other particulars, but leaving the de-

vise to the Seminary precisely as it stood in the former will, and dated the new will, intentionally, as of the same date as the old will. Held, That by execution of the new will the status then existed was not changed, and that the Seminary is not entitled to the $60,000 of bonds under the new will, although some of the bonds received by it had defaulted in their interest before the death of the testator.

HUMPHREY & HUMPHREY for appellants.

RICHARDS & HARRIS, JOHN H. CHANDLER, for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE HOBSON—
Affirming.

Theodore Harris died in August, 1909, a resident of Jefferson County, leaving a large estate which he disposed of by his will. This controversy has arisen between the executors of the will and the Southern Baptist Theological Seminary one of the devisees under the will. The facts in regard to the controversy are these:

Mr. Harris was a member of the Baptist Church and had been for a number of years deeply interested in the Southern Baptist Theological Seminary and was, for a long time, one of the executive committee of the institution. On June 25, 1891, he executed and delivered to the Seminary the following paper:

"I hereby bind my heirs and personal representatives to pay to the Southern Baptist Theological Seminary at Louisville, Ky., the sum or value of sixty thousand dollars, upon the terms and conditions herein set out.

"1st. The said sum shall be used exclusively for the purpose of founding, and its net income used exclusively for perpetually maintaining a professorship in said Seminary, to be called 'The Theodore Harris Professorship of the Old Testament,' and no other purpose, and said sum and its income not to be lessened by any changes or commissions for its management.

"2d. The same may be paid one year after the 8th day of January, 1898. If at any time there is enough to meet all the devises and provisions in my last will to my children and descendants, and a surplus sufficient to provide said sixty thousand dollars remains, then it shall be paid in full. If not enough, then my children and this donation shall be scaled pro rata, but not so as to reduce the shares of the children below the sum of twenty thousand dollars each. In the event any scaling

has to be done, then the full amount of said sixty thousand dollars must be made up by said Theological Seminary from sources other than my estate, and if not so done within two years thereafter, then the donation and this writing shall become void and of no effect.

"3d. My personal representatives shall have the right to pay off this obligation in whole or part in dividend paying securities at par, which are then paying or, have been paying as much as five per cent per annum for the preceding two years, or in securities yielding a greater rate of interest at the current market price, or in cash at the option and by the selection of said representatives. This obligation will be provided for in my will, and is not binding until said will has gone into effect. (Signed) Theodore Harris. Witness: I. E. Sutcliffe, John H. Leathers, W. S. Jones."

At the time of the execution of this paper Mr. Harris was in bad health and perhaps contemplated that he would not live very long. His health recovered, however, and he continued to add to his estate. On April 15, 1907, he made a will disposing of his estate, the second clause of that will was in these words:

"Second: I have promised to give sixty thousand dollars ($60,000) to the Southern Baptist Theological Seminary of Louisville, Ky., and if this amount shall not have been paid before my death, I direct that it shall be paid to said Seminary by my executors with as little delay as possible either in cash or at the option of my executors in any first mortgage bonds at par of which my estate may then be possessed and which have never defaulted in their interest."

After the will had been executed and the authorities of the Seminary had been notified as to what he had done, the President apprehensive that there might be litigation over Mr. Harris' will, as it contained some unusual provisions, suggested this to Mr. Harris and asked him to deliver the $60,000 in bonds then to the Seminary, agreeing that if he would do this the Seminary would deliver to him the interest coupons as long as he lived, so that Mr. Harris would have the interest on the bonds and yet not be compelled to pay taxes on them. Mr. Harris finally agreed to the proposition, and directed the committee of the Senimary to meet him at his office for the purpose of receiving the bonds. When they came he delivered to them $60,000 of telephone bonds and they

executed to him simply a receipt for them; Mr. Harris did not like the form of the receipt and thereupon, at his request, the following paper was prepared and executed, which he accepted:

"For and in consideration of the donation by Theodore Harris to the Southern Baptist Theological Seminary, for its endowment, sixty thousand dollars ($60,-000) in Home Telephone Bonds, it is hereby stipulated and agreed that the said Southern Baptist Theological Seminary will turn over to Theodore Harris the coupons from the said bonds at least two days before said coupons shall fall due.

"This arrangement is to continue until the death of Theodore Harris, after which time the coupons as well as the bonds above mentioned are to become the property of the Southern Baptist Theological Seminary.

"It is further agreed and understood that in case the Southern Baptist Theological Seminary desires to sell the above bonds with a view to re-investment, said sale and re-investment shall be made only with the consent and approval of Theodore Harris.

(Signed)
"THE SOUTHERN BAPTIST THEOLOGICAL SEMINARY,
"By E. Y. MULLINS,
"President and Fin. Agt.
"Louisville, Ky., May 9th, 1907."


"Louisville, Ky., May 9th, 1907.
"This day received of Theodore Harris.
"40 Bonds of $500 each of the Springfield Home Telephone Co.,
"54 Bonds of $500.00 each of the Russellville Home Telephone Co.,
"30 Bonds of $100.00 each of the Russellville Home Telephone Co.,
"35 Bonds of $100.00 each and 13 bonds of $500.00 each of the Mayfield Home Telephone Co.,
"Making a total of $60,000.00.
(Signed)
"SOUTHERN BAPTIST THEOLOGICAL SEMINARY,
"By E. Y. MULLINS, Pres."


The Springfield Home Telephone Co., bonds referred to in the above receipt amounting to $20,000 defaulted in their interest on July 1, 1908, and Mr. Harris knew this.

On April 12, 1909, or nearly two years after the execution of the other will, he rewrote his will making some changes in it but leaving the second clause relating to the Southern Baptist Theological Seminary just as it stood in the will of 1907. He wrote this will himself by dictating to his stenographer, having the former will in his hands, and reading from it when he desired. When he had finished the will and the stenographer had begun copying it, she called his attention to the fact that he had given her the date as April 15, 1907, when that day was April 12, 1909, and he said to the stenographer that was alright and that was the way he intended it to be written. The will as thus dictated was signed by him and properly witnessed. After the execution of this will and on July 1, 1909, the Russellville bonds named in the receipt above quoted, defaulted in their interest and Mr. Harris knew this; he afterwards died in the following August. At the time of his death the Mayfield bonds had not defaulted in their interest and the other bonds were in all worth only $7,258. The trustees of the Seminary brought this suit against the executors asking that the executors be required to deliver them bonds that had not defaulted in their interest and were worth $60,000 in the market. The circuit court declined to do this, but required the Seminary to keep the bonds which it had and to account for them at the price of $17,258 adjudging the executors to deliver to the Seminary $42,742 of good first mortgage bonds, at par; that is, their face value, which had never defaulted in interest. From this judgment the executors have appealed and the Seminary has prosecuted a cross appeal.

The above are the facts as shown by the record. Some question is made that the record does not show that the will of 1907 was precisely the same as the will executed in 1909, so far as it relates to the devise to the Seminary; but this fact is sufficiently established by the testimony of the two witnesses, who were the only persons testifying on the subject. There seems to be no dispute about any other fact in the case.

The paper of June 25, 1891, is purely testamentary in character, and as it has not been probated as a will cannot have any effect in determining the rights of the parties, except in so far as it may throw light upon the meaning and proper construction of the will. When the will of April 15, 1907, had been made, the authorities of

the Seminary undertook to anticipate any litigation that might arise over the will by getting possession of the bonds before Mr. Harris' death and the transaction of May 9, 1907, was clearly an ademption of the legacy provided by that will. Section 4840, Kentucky Statutes, provides:

"A provision for or advancement to any person shall be deemed a satisfaction in whole or in part of a devise or bequest to such person contained in a previous will, if it would be so deemed in case the devisee or legatee were the child of the testator; and whether he is a child or not, it shall be so deemed in all cases in which it shall appear from parol or other evidence to have been so intended."

The purpose of the statute is to prevent a double portion and the parol proof leaves no doubt that the delivery of the bonds was intended as a satisfaction of the legacy. (Duncan v. Clay, 13 Bush, 51; Swinbroad v. Bright, 62 S. W., 484.)

If nothing had been done after May 9, 1907, there would be little difficulty in disposing of the case. The question, therefore, is was the status of the parties changed by what afterwards occurred.

There would be great force in the suggestion that the will must be read in the light of the circumstances surrounding the testator when he executed it and must speak as of that date, but for other facts shown in the record. In the will of 1907 the testator had provided, among other things, an annuity to Mrs. Caroline Brown, a relative who lived two doors from him and to whom he was very much attached. She died in February, 1909, or about three months before the will of 1909 was drawn and yet the clause giving her the annuity was left in the will of April, 1909. In addition to this, when the testator used in that will the same words as he had used in the preceding will in regard to the Southern Baptist Theological Seminary, and then intentionally dated the will April 15, 1907, he must be presumed to have intended his will to speak as of the date which he gave it. It is true that parol evidence may be received to show the real date of an instrument, but when it appears that the date of an instrument was intentionally fixed as it was, this part of the instrument is to be considered in determining its meaning, no less than any other part. When the testator wrote his will in April, 1909, he had satisfied his promise to the Seminary. The Seminary had neither

moral or legal claim upon him to do anything more than he had done and any inference that might be drawn from his rewriting the will is overbalanced by the fact that he did not change this clause of the will and then intentionally dated back the instrument to the date of the old will.

It is earnestly insisted that the endowment of the professorship in the Seminary to bear his name, was one of the cherished purposes of the testator; that he knew the chair could not be established unless he gave the Seminary $60,000 of good bonds and that to give it only $17,000 under the will would be to defeat this purpose of the will entirely as the trustees can make no use of this sum in establishing the professorship. All this may be true and if we could consider parol evidence as to the intentions and desires of the testator we might reach the same conclusion as the circuit court. Parol evidence may be received to put the court in the light of the circumstances surrounding the testator at the time of the execution of the will so that the court may read the will from his standpoint, but such proof cannot be admitted to alter the will or to make it speak a purpose different from that written in the will. The testator's intentions must be gathered from what he says in the will and in so far as his intentions are not expressed there they cannot be carried into effect.

If the bonds, which the testator delivered to the Seminary had doubled in value it would have been entitled to all the increase and he would have had no right to relief. The fact that the bonds instead of increasing in value depreciated, after their delivery to the Seminary, does not alter the rights of the parties. The testator might if he chose, rewrite his will in April, 1909, and make it effective as though written in April, 1907.

The language of clause two of the will fits so appropriately the situation as it existed in April, 1907, and is so inappropriate to the situation of matters in April, 1909, as to raise a presumption that it was taken from the former will. The testator, when he simply repeated in his will, made in 1909, the language of the former devise made in 1907, and dated the will as of that time, did nothing showing an intention to disturb the existing status and, as the rights of the parties must be determined from the writing construed according to the natural meaning of its terms, no further liability

can be adjudged against his estate. If the bonds had appreciated in value no one would have thought that any further liability existed, and the fact that the bonds depreciated cannot affect the construction of the will.

Judgment reversed and cause remanded for a judgment dismissing the petition. On the cross appeal the judgment is affirmed.