COLLEY, EXECUTOR *v.* BRITTON, EXECUTRIX

[No. 178, October Term, 1955.]

*Decided June 8, 1956.*

240

The cause was argued before BRUNE, C. J., and DELA-PLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Downey Rice,* with whom were *Rufus King* and *Rice & King* on the brief, for the appellant.

*Patricia Warren,* with whom was *Albert Brick* on the brief, for the appellee.

COLLINS, J., delivered the opinion of the Court.

This is an appeal from an order of the Orphans' Court for Prince George's County, Maryland, dismissing the petition of Marie C. Colley that the previous order of that court, approving the first and final administration account of Norma Hardy Britton, Executrix of the Estate of Alice H. Read, deceased, appellee, be annulled, revoked and set aside. A suggestion of the death of Marie C. Colley was filed in this Court and Claude Carolyn Colley, Executor of the Estate of Marie C. Colley, was substituted as appellant in the place and stead of the said Marie C. Colley.

Alice H. Read, a resident of Riverdale, Prince George's County, died on January 17, 1954, leaving a last will and testament dated October 24, 1950, which provided, among other things: "ITEM 6. I give and bequeath to my friend, Norma Hardy Britton, the sum of Two Thousand ($2,000.00) Dollars, my gold watch, my dog 'Woofie' and his dog house, chain, and my Persian cat, 'Princess'; the said dog and cat are already in her keeping. But if the said Norma Hardy Britton shall predecease me, then and in that event

this bequest shall be null and void and shall revert to my estate. ALL THE REST, RESIDUE AND REMAINDER of my estate, of every kind and description; real, personal and mixed; legal and equitable; wheresoever and howsoever situated; that which I now have, or may hereafter acquire, I give, devise and bequeath to Marie C. Colley, the widow of Claude C. Colley, absolutely and in fee simple forever. LASTLY, I hereby nominate, constitute and appoint my said friend, Norma Hardy Britton, attorney at 1010 Vermont Avenue, Washington, D. C., as executrix of this my last will and testament, and request the Court to allow her a very liberal fee for her services, because of the many favors she has rendered me over a period of many years, and I direct that she not be required to give bond or undertaking for the faithful performance of the trust in her reposed."

On April 13, 1953, Miss Read executed a codicil to her will of October 24, 1950, which provided: "I, Alice H. Read, being of sound mind, memory and understanding, do make, publish and declare this instrument in writing to be a codicil to my last will and testament, dated October 24th, 1950, which will be attached hereto. 1. I give and bequeath to Frances Read Ford my Onyx and diamond ring; my *platnum* watch and my ring that has three red stones set in it, absolutely and forever. 2. To my friend, Mrs. Louise Allen C.S.P., I give and bequeath the sum of One Hundred ($100.00) Dollars, absolutely and forever, if she be living at the time of my death, but in the event she should predecease me, then and in that event, the said bequest shall revert to the corpus of my estate." The will and codicil were admitted to probate on March 30, 1954.

Norma Hardy Britton was granted Letters Testamentary. On March 18, 1955, Mrs. Britton filed a first and final account showing total assets of $4,439.61 and in which, among other distributions, she made the following:

"This Executrix waives her commission and pays to the Register of Wills 1% tax $ 44.50

To Norma Hardy Britton, attorneys fee 500.00

To Mrs. Louise Allen, shown on page 3 100.00

\* \* \*

To Norma Hardy Britton, as per terms of Will $2000.00 see Page 2
Less 7½% Tax 150.00 1850.00

To Register of Wills Tax 150.00

To Marie C. Colley, rest and residue as per terms of Will $444.54
Less 7½% Tax 33.34 411.20

To Reg. of Wills Tax 33.34"

This account was approved and passed by the Orphans' Court on March 22, 1955.

Sometime about August 9, 1955, Marie C. Colley, the residuary legatee, filed a petition in which, among other things, she alleged: "* * * your petitioner made inquiry and learned and ascertained that there are certain flagrant inaccuracies and improprieties in the said First and Final Report to wit: (a) The payment by the said Norma Hardy Britton, as executrix, to herself as legatee of the sum of Two Thousand ($2,000.00) Dollars out of said estate was a double distribution, and should have been disallowed because the said Norma Hardy Britton had arranged with the testatrix, on or about the first day of May, 1953, to receive the said sum of $2,000 through the medium of United States Savings bonds bought and held by the said testatrix under the term, 'POD to Norma Hardy Britton'. (b) The inheritance tax, if payable on account of the receipt by the said Norma Hardy Britton of the proceeds of United States Savings Bonds as aforesaid, was not a proper charge against the other assets of said estate. (c) The sum of Five Hundred ($500) Dollars,

charged against said estate as a fee for legal services by the said Norma Hardy Britton, was improper and should have been disallowed by reason of the fact that the said Norma Hardy Britton rendered no legal services and is not licensed to engage in the practice of law in the State of Maryland." She asked that the first and final account be revoked and set aside, and that Mrs. Britton be required to make a proper accounting and distribution as executrix of the estate. After answer filed by Mrs. Britton, as executrix, testimony was taken on the petition and answer before the Orphans' Court. From an order, signed by two judges of that court dismissing the petition of Marie C. Colley, an appeal was taken by Mrs. Colley's attorneys to this Court. As above stated, after her death, Claude Carolyn Colley, executor of her estate, was substituted as appellant.

Testimony before the Orphans' Court showed that Miss Read was born June 22, 1874. She first met Mrs. Britton in 1925 in the office of the law firm handling Miss Read's mother's estate. Miss Read had gone there for an advancement from the estate, stating that she had no money. This was refused by the law firm. Mrs. Britton, however, gave her some money. They had been intimate friends since that time. Mrs. Britton had also been her attorney for many years. The aforesaid will of October 24, 1950, was drafted for Miss Read by Mrs. Britton. Miss Read took this will to her doctor's office where it was witnessed by the doctor and his secretary. Mrs. Britton testified that, when Miss Read insisted that she be left $2,000.00, she told Miss Read: "I told her, I said, Miss Read, suppose I am dead. You don't know my people, * * * I said put in here if I die first it will revert to the estate. And she said very well, Mrs. Britton, do that."

On April 11, 1953, Miss Read wrote a letter directed to Mr. Herbert B. Lord, bank official of National Savings and Trust Company of Washington, where she had a safety deposit box, and which letter read as follows: "I have asked Mrs. Norma Hardy Britton, my attorney, to see you and get Two Thousand ($2,000.00) Dollars of my bonds (which will

be four $500.00 bonds) out of my *safty* box in your Bank and give them to you and ask you to send them back to the U. S. Treasury and have them put 'Payable on death to Norma Hardy Britton'. *This is done so that she can take the bonds immediately upon my death and not have to wait for the administration of my estate.* Please believe me when I tell you that she did not insist upon this; it is entirely my own idea." (Italics supplied). Pursuant to the authority of this letter, on May 1, 1953, the United States Government reissued to Miss Read $2,000.00 in Series G bonds made payable on death to Mrs. Britton. In the answer to the petition now before us filed by Mrs. Britton as executrix of Miss Read's estate, she made affidavit to the fact that she never arranged with Miss Read "to change any bond; there was never any conversation on the subject, and this executrix did not know, nor had she any idea that such change had been made, until the *safty* deposit box in the National Savings & Trust Company was opened, so a Deputy D. C. Tax Collector, a deputy Register of Wills of D. C., and an official of the said bank could examine the contents of said box and make inventory of same." (Italics supplied). In her testimony she denied that she typed the letter. However, later in her testimony she stated that she did not remember writing the letter or anything about the $2,000.00 in bonds. Upon opening Miss Read's safety deposit box, Mrs. Britton called Mr. Nelson Colley. She testified that she told Mr. Colley about the $2,000.00 in bonds payable to her at death and said: "I don't know whether that would be an advancement or not. I don't know. If I were you I'd go and get a lawyer and investigate." The Orphans' Court, who saw and heard the witnesses, found that Mrs. Britton entered the safety deposit box on April 20, 1953, and that there was an inescapable conclusion that Mrs. Britton "effected the change in the bonds to make them payable on death to her."

In reference to the attorney's fee in the amount of $500.00 allowed in the account to Mrs. Britton, who was not a member of the Maryland Bar, the Orphans' Court stated: "Although such practice is now forbidden by this Court, Britton

was, at the time, acting in accord with the general practice of this Court then prevailing and permitted."

The appellant contends that the words "This is done so that she can take the bonds immediately upon my death and not have to wait for the administration of my estate", in the letter of April 11, 1953, to the bank for the purpose of making the bonds payable to Mrs. Britton on death, was a plain indication that Miss Read was substituting the bonds for the $2,000.00 legacy to Mrs. Britton in the will and that these bonds adeemed the legacy.

When a parent, after the date of the will, makes a gift to a child in substantial amount of similar property as that contained in the will, an ademption by advancement results. The courts of equity adopted this rule to prevent a child from getting a double portion, it being supposed that each child would be treated equally by the parent, as ordinarily each child is entitled to the same claim upon his bounty. This presumption, however, can be rebutted by evidence that the parent did not intend a gift, made subsequent to his will, to be an advancement. *Miller on Construction of Wills,* Sec. 144; *Parks v. Parks,* 19 Md. 323; *Smith v. Darby,* 39 Md. 268; *Harley v. Harley,* 57 Md. 340; *Dilley v. Love,* 61 Md. 603; *Wallace v. DuBois,* 65 Md. 153, 4 A. 402; *Selby v. Fidelity Trust Co.,* 188 Md. 192, 51 A. 2d 822. In the instant case Miss Read does not stand in *loco parentis* to Mrs. Britton.

Of course, in this case the provision in the will, like the transfer of the bonds, could have been altered, changed, or destroyed by Miss Read during her lifetime. There therefore existed a *locus poenitentiae* in Miss Read. *Milholland v. Whalen,* 89 Md. 212, 43 A. 43, 44 L.R.A. 205. Ordinarily an advancement is a pure and irrevocable gift and must result from a complete act of the intestate in his lifetime by which he divests himself of all property in the subject. However, in some cases and under some circumstances it may not take effect in possession until after the death of the intestate. *Clark v. Willson,* 27 Md. 693, 700; *Harley v. Harley, supra; Edwards v. Freeman,* 2 P. Wms. 440, 446; 2 *Wms. on Executors,* 1289, 1291, 1292. It was said in *Clark v. Willson,*

*supra:* "It is not necessary to constitute an advancement, that the provision should take place in the parent's lifetime. A portion secured to the child *in futuro,* or to commence after the father's death, or upon a contingency that has happened, or to arise within a reasonable time, is an advancement. *Edwards v. Freeman,* 2 P. Wms. 442; 2 Williams on Excrs. 1289; Toller on Excrs. 377; *Wilks v. Greer,* 14 Ala. 442; *Hook v. Hook,* 13 B. Mon. 527, 528." We see no reason why the same principle should not apply to an advancement to a person other than a child. It is said in *Miller on Construction of Wills,* page 390, Section 144: "In the case of a legacy to one towards whom the testator does not stand in loco parentis, the rule is that if the bequest is for a particular purpose, a subsequent gift to the legatee by the testator in his lifetime for the same purpose operates as a satisfaction of the legacy to the amount of the gift. This rule is subject to the qualification that the gift inter vivos must not be substantially different in kind from the legacy; * * *." *Loyola College v. Dugan,* 137 Md. 545, 550, 551, 113 A. 81. If a testator has given a legacy in order to accomplish a certain purpose, and he subsequently accomplishes that purpose himself, the legacy is presumed to be adeemed, whether or not a presumption of ademption would have arisen otherwise. *Loyola College v. Dugan, supra; Louisville Trust Co. v. Southern Baptist Theological Seminary,* 148 Ky. 711, 147 S. W. 431; *Wheeler v. Wood,* 104 Mich. 414, 62 N. W. 577; *Austin v. Austin,* 147 Neb. 109, 22 N. W. 2d 560; 4 *Page on Wills,* Lifetime Ed., sec. 1543; *Rhein v. Wheltle,* 206 Md. 1, 7, 109 A. 2d 923.

It is also established law in this State that when in his lifetime a testator pays to a legatee the amount of money given by a will, and such payment is intended to be in satisfaction of the legacy, the legacy is thereby adeemed. The question whether a legacy is adeemed by a gift made by a testator to the legatee after the will was executed *depends upon the intention of the testator. Rhein v. Wheltle, supra.* The primary question before us here is the intention of the testatrix. In determining that intention here, it is signifi-

cant that Mrs. Britton drew the will. Although she says she does not remember typing the letter or getting the bonds from the safety deposit box, it is significant that the word "safety" in the letter to the bank is spelled "safty" and the same word in the affidavit made and typed by Mrs. Britton is spelled "safty". The Orphans' Court, who saw and heard the witnesses, found that Mrs. Britton effected the change in the bonds to make them payable on death to her.

The bequest of $2,000.00 was payable to Mrs. Britton only if she survived Miss Read. The same condition attached to the bonds. It is evident that Miss Read intended that Mrs. Britton should take the $2,000.00 in bonds immediately upon her death in place of the $2,000.00 in cash for which she would have had to wait until the estate was administered. When the $2,000.00 in bonds became the property of Mrs. Britton, the purpose of Miss Read was accomplished and the legacy was adeemed. The statement in the letter to the bank that the $2,000.00 in bonds were to be made payable on death to Mrs. Britton "so that she can take the bonds immediately upon my death and not have to wait for the administration of my estate" is most significant. We are, therefore, of opinion that it was the intention of the testatrix that the transfer of the bonds constitute an ademption of the bequest. The $2,000.00 should not have been allowed to Mrs. Britton in the administration account.

As above stated, the letter written by Miss Read, directing a transfer of the bonds to Mrs. Britton, was written on April 11, 1953, and, as above stated, the codicil to Miss Read's will was executed two days later on April 13th. It is a well known general principle of law in this State that a codicil operates as a republication of the whole will, and, so far as it is not revoked or altered by the codicil to include any alterations made before the date of the codicil, it speaks from the date of the codicil. *Gilmer v. Aldridge,* 154 Md. 632, 637, 141 A. 377; *Syfer v. Dolby,* 182 Md. 139, 32 A. 2d 529; *Lederer v. Safe Deposit & Trust Co.,* 182 Md. 422, 427, 428, 35 A. 2d 166; 68 *Corpus Juris,* page 861, Section 576. However, a codicil does not operate to revive a legacy

which has been satisfied or adeemed. 57 *Am. Juris.*, Section 626, page 428. *2 Page on Wills*, 3rd Edition, Section 556, page 30, states: "If a general legacy is given by will, and it is subsequently adeemed by satisfaction, the subsequent republication of the will does not of itself bring it down to date so as to prevent such ademption." In *Powys v. Mansfield,* 3 Mylne & Craig 359, the English Court in 1838 stated that a codicil republished a will and made the will speak from the date of the codicil. This case, however, applied this rule only to after acquired lands. The Court further said that the making of a codicil did not apply so as to revive a legacy that was revoked, adeemed or satisfied. In *Langdon v. Astor's Executors,* 16 N. Y. 9, decided in 1857, the New York Court of Appeals reaffirmed what it said was the law in England, that a codicil did not revive an adeemed legacy and that any other rule would make a codicil, which merely republished a will, operate as a new bequest. The Court there cited many English cases in support.

In *Paine v. Parsons,* 31 Mass. 318, a father executed a will bequeathing $268.00 to his daughter to be paid at her marriage. Upon the daughter's marriage the father paid to her about $220.00 and several years subsequent to this payment he executed a codicil giving the daughter $100.00 "in addition to what he had before given her." The father repeatedly said before and after the execution of the codicil that he had paid off the original legacy to the daughter. It was there held that the republication of the will by the execution of the codicil did not rebut the presumption that the father intended an ademption of the legacy given in the will. In *Gibbons v. Ward,* 115 Ark. 184, 171 S. W. 90, decided in 1914, the deceased devised certain property to his wife. After his wife's death the testator republished the will by executing a codicil. In that case the Court stated the general rule that a codicil republished a will as of the date of the codicil but that such republication does not revive a legacy which has been adeemed or has lapsed. In *Dunn v. Kearney,* 288 Ill. 49, 123 N. E. 105, decided in 1919, the Illinois Court held that, although the execution of a codicil operated as a republica-

tion of the will, it did not revive a lapsed legacy. It is said in *Lansdale v. Dearing,* 351 Mo. 356, 173 S. W. 2d 25, 147 A. L. R. 728, 735: "It is contended we must consider the will as of the date of the codicil because of the rule a codicil draws a will down to its own date. *Harvy v. Chouteau,* 14 Mo. 587, 55 Am Dec 120; 68 CJ Wills, Sec. 586. However, such rule is not absolute and is subject to the limitation that the intention of the testator must not be defeated by its application. *Harvy v. Chouteau,* supra; *Hourigan v. McBee,* Mo App, 130 SW (2d) 661. Such rule will not operate to revive legacies which have lapsed or have been revoked, adeemed or satisfied in the interval between the will and the codicil. 68 CJ Wills, Sec. 587." In *Alsop's Appeal,* 9 Pa. 374, a case fairly similar to the one before us here, the testator bequeathed several legacies of stocks and bonds which he parted with prior to his death. The testator later executed a codicil making other bequests to the same people who were to have received the stocks. The Court there held that the stock legacies were adeemed *pro tanto* and were not revived by the subsequent codicil. It is stated in 68 *Corpus Juris,* page 870, Section 587: "The rule that a codicil republishing or confirming a will makes it speak from the date of the codicil is not applicable for all purposes, and will not operate to revive legacies which have lapsed or been revoked, adeemed, or satisfied in the interval between the will and the codicil, and it has been held that the same rule applies where there is an actual reexecution of the will and codicils."

The appellant also questions the attorney's fee of $500.00 allowed Mrs. Britton. Chapter 441 of the Acts of 1937, Code, 1951, Article 93, Section 9, provides: "For legal services rendered by an attorney at law to an estate, the Orphans' Court may on his own petition allow such attorney such sums as it may deem reasonable as an expense in the administration account of the Executor or of the Administrator during whose encumbency such services were rendered." Prior to Chapter 511 of the Acts of 1939, authority was given the Orphans' Court for the allowance of counsel fees under the statutory provision, Code, 1924, Article 93, Section 5,

for "allowance for costs and extraordinary expenses (not personal), which the court may think proper to allow, laid out in the recovery or security of any part of the estate; * * *." Under that provision this Court held that counsel fees could be allowed out of an estate only for services which were in some way beneficial to the estate, either by enlargement or protection of it. *Mudge v. Mudge,* 155 Md. 1, 141 A. 396; *City of Baltimore v. Link,* 174 Md. 111, 114, 197 A. 801. By Chapter 511 of the Acts of 1939, Code, 1951, Article 93, Section 5, it was provided that the Orphans' Court could allow "reasonable fees for legal services rendered upon any matter in connection with the administration or distribution of the estate in respect to which the Court may believe legal services proper." This Court said in *Gradman v. Brown,* 183 Md. 634, 640, 39 A. 2d 808, (decided November 15, 1944), after referring to Chapter 441 of the Acts of 1937, *supra,* and Chapter 511 of the Acts of 1939, *supra:* "It is clear under the facts of the case that appellees did not render services to the estate. What they did neither added to nor protected the estate. They represented Philip Gradman, in his fiduciary capacity, in the matter of the distribution of the estate of Isadore J. Gradman. And as their services were not rendered to the estate, the Orphans' Court was without power to allow them a fee." Also, as to those Acts of 1937 and 1939, *supra,* this Court said in *American, etc., Comm. v. Eisenberg,* 194 Md. 193, 199, 70 A. 2d 40: "However, it cannot be supposed that the Legislature, if it had the power, intended that counsel fees shall be allowed for services not rendered to the estate, * * *." See also *Sullivan v. Doyle,* 193 Md. 421, 67 A. 2d 246. The services rendered by Mrs. Britton to the estate were purely those of an executrix. As there were no other services rendered to the estate, this attorney's fee of $500.00 should not have been allowed in this case. The request in the will that the Court allow her "a very liberal fee for her services", evidently was a request that she be allowed liberal commissions. However, she has waived her commissions which she is allowed to do. *In re Estate of Watts,* 108 Md. 696, 699, 71 A. 316.

The order will be reversed and case remanded for the

statement of an account eliminating the legacy of $2,000.00 and the attorney's fee of $500.00 to Mrs. Norma Hardy Britton. Under the circumstances in this case the waiver of commissions appears to have been conditioned on her receiving the attorney's fee. As that fee is denied we see no reason why she could not withdraw her waiver of commissions and be allowed liberal compensation within the limits prescribed by law as executrix, as the testatrix desired.

> *Order reversed and case remanded for further proceedings as herein indicated. Costs to be paid by Mrs. Norma Hardy Britton personally.*